THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY MANYPENNY and KENNETH ENSER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AMAZON DIGITAL SERVICES LLC, and AMAZON TECHNOLOGIES, INC.,

Defendants.

Civil Action No. 2:26-cv-01534-TL

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

NOTE ON MOTION CALENDAR:
AUGUST 25, 2026

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Automatic Content Recognition Technology and Amazon Fire TV. ..... 2

B. Amazon's Notification to Customers That Their Viewing Data May Be Collected. ..... 2

C. Plaintiffs' Suit Based on Alleged Collection of Data Through ACR Technology. ..... 4

III. ARGUMENT ..... 5

A. Plaintiffs' Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1), Because Plaintiffs Fail to Establish Article III Standing. ..... 5

1. Plaintiffs Do Not Allege a "Highly Offensive" Intrusion or Disclosure. ..... 6

2. Plaintiffs Had No Expectation of Privacy in Data Purportedly Collected. ..... 8

B. Plaintiffs Fail to State a Claim Under Rule 12(b)(6). ..... 9

1. Plaintiffs Fail to State a VPPA Claim. ..... 9

2. Plaintiffs Fail to State an Intrusion-Upon-Seclusion Claim. ..... 11

3. Plaintiffs' Consumer Protection Claims Must Be Dismissed. ..... 12

4. Plaintiffs Fail to State a Claim for Breach of Implied Contract. ..... 15

5. Plaintiffs Fail to State a Claim for Unjust Enrichment. ..... 17

IV. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon Serv. Fee Litig.*,
705 F. Supp. 3d 1255 (W.D. Wash. 2023)........................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................9

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. 2024)........................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................9, 13

*Broder v. MBNA Corp.*,
722 N.Y.S.2d 524 (1st Dep't 2001)........................................14

*Budsberg v. Trause*,
2015 WL 7259958 (Wash. Ct. App. Nov. 17, 2015)........................................11

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)........................................13

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)........................................14

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018)........................................15

*Covarrubias v. Am. Airlines, Inc.*,
2011 WL 13100749 (W.D. Wash. Apr. 21, 2011)........................................15, 16

*Crowell v. Audible Inc.*,
806 F. Supp. 3d 1216 (W.D. Wash. 2025)........................................12

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026)........................................7, 8

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)........................................16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)........................................5, 10

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)........................................14

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975 (W.D. Wash. 2022) .......... 13

*Gale v. Int'l Bus. Machs. Corp.*,
781 N.Y.S. 2d 45 (N.Y. App. Div. 2004) .......... 14

*Geraci v. Homestreet Bank*,
203 F. Supp. 2d 1211 (W.D. Wash. 2002) .......... 18

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023) .......... 11, 12

*Grossman v. GEICO Cas. Co.*,
2022 WL 1656593 (2d Cir. May 25, 2022) .......... 14

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. March 5, 2024) .......... 8, 11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 11

*Hennessey v. Radius Glob. Sols. LLC*,
2024 WL 5119824 (W.D. Wash. Dec. 16, 2024) .......... 11

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 8

*Izquierdo v. Mondelez Int'l, Inc.*,
2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .......... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 13

*Keystone Land & Dev. Co. v. Xerox Corp.*,
194 P.3d 945 (Wash. 2004) .......... 16

*Krefting v. Kaye-Smith Enters. Inc.*,
2023 WL 4846850 (W.D. Wash. July 28, 2023) .......... 15

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 6, 8, 11

*Lugo v. Amazon.com, Inc.*,
2023 WL 6241200 (W.D. Wash. Sept. 26, 2023) .......... 5

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 8, 11

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)........................................14

*In re MCG Health Data Sec. Issue Litig.*,
2023 WL 3057428 (W.D. Wash. Mar. 27, 2023) ........................................17

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ........................................17

*Mendoza v. Microsoft Inc.*,
2014 WL 4540213 (W.D. Wash. Sept. 11, 2014)........................................6, 10

*Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*,
301 P.2d 759 (Wash. 1956)........................................15

*Mitchell v. Credit Sols., LLC*,
2023 WL 12193813 (N.D. Ill. Sept. 14, 2023) ........................................13

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........................................10

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ........................................15

*Nicholas v. Amazon.com, Inc.*,
740 F. Supp. 3d 1099 (W.D. Wash. 2024)........................................9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ........................................18

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................16

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002)........................................13

*Owens v. Aspen Funding LLC*,
2011 WL 4024820 (W.D.N.Y. Sept. 9, 2011) ........................................14

*Patterson v. SLI, LLC, et al.*,
2026 WL 1786230 (N.D. Ill. June 22, 2026)........................................13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................*passim*

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........................................8

*Rodriguez v. Sony Computer Ent. Am. LLC*,
2012 WL 12921066 (N.D. Cal. Apr. 20, 2012) .......... 10

*Romero v. Amazon.com Inc.*,
2025 WL 2409943 (W.D. Wash. Aug. 20, 2025) .......... 12

*Sargsyan v. Amazon.com Inc*,
2026 WL 607715 (W.D. Wash. Mar. 4, 2026) .......... 17

*Siegal v. GEICO Cas. Co.*,
523 F. Supp. 3d 1032 (N.D. Ill. 2021) .......... 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5

*Street v. Amazon.com Servs., LLC*,
2022 WL 3683811 (W.D. Wash. Aug. 25, 2022) .......... 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .......... 7

*Vance v. Microsoft Corp.*,
525 F. Supp. 3d 1287 (W.D. Wash. 2021) .......... 18

*Washington v. Flixbus, Inc.*,
2025 WL 1592961 (S.D. Cal. June 5, 2025) .......... 3

*Woodard v. Boeing Emps. Credit Union*,
2023 WL 4847126 (W.D. Wash. July 28, 2023) .......... 15, 17

*Wurtzburger v. Ky. Fried Chicken*,
2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) .......... 15

*Young v. Young*,
191 P.3d 1258 (Wash. 2008) .......... 17

*Yountville Invs., LLC v. Bank of Am., N.A.*,
2009 WL 2342462 (W.D. Wash. July 28, 2009) .......... 17

**Statutes**

18 U.S.C. § 2710 .......... 9, 10

**Other Authorities**

Fed. R. Civ. P. 9 .......... 9, 13

Fed. R. Civ. P. 12 ........................................................................................................ 5, 9

Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Digital Services LLC, and Amazon Technologies, Inc. (collectively, "Amazon") bring this motion to dismiss Plaintiffs' Complaint in its entirety.

## I. INTRODUCTION

In this purported class action, Plaintiffs take issue with the operation of automatic content recognition, or "ACR," on certain Amazon Fire TV devices—a feature of which they received notice, and which was enabled on their devices only by their election and consent. Plaintiffs nevertheless claim that Amazon "surreptitiously intercepted and disclosed the[ir] Sensitive Information" through ACR. But the Complaint nowhere identifies what "Sensitive Information" of Plaintiffs was purportedly intercepted, to whom or how it was purportedly disclosed, or how Plaintiffs were actually injured by any of Amazon's alleged conduct. Moreover, Plaintiffs agreed to Amazon's Conditions of Use and Privacy Notice, which informed them that Amazon may collect information about the use of their televisions. These deficiencies require dismissal of the Complaint.

As a threshold matter, Plaintiffs lack Article III standing because they fail to allege an injury-in-fact. To demonstrate standing, Plaintiffs must allege an injury with a close relationship to a traditional privacy harm by identifying "embarrassing, invasive, or otherwise private information collected by" Defendants. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Because Plaintiffs identify no such information, they fail to plead the "highly offensive" interference or disclosure required to show standing. And given Plaintiffs' admission that they consented to the Conditions of Use and Privacy Notice, Plaintiffs also cannot show that they had a reasonable expectation of privacy, as required to allege a privacy harm.

In addition to these jurisdictional defects, Plaintiffs fail to plausibly allege any of their claims. Plaintiffs' principal claim is asserted under the Video Privacy Protection Act ("VPPA"). The essence of such a claim is disclosure to a third party—but, again, the Complaint fails to allege any disclosure of personally identifiable information to any third party. Plaintiffs also assert claims for intrusion upon seclusion, violation of state consumer protection statutes, breach of implied contract, and unjust enrichment, but these, too, fail to state a claim. The intrusion-upon-seclusion claim fails for the same reasons that Plaintiffs lack standing: Plaintiffs do not allege any highly offensive collection of their

information, and they admit they consented to the collection of their data. Plaintiffs' claims for violations of Illinois and New York consumer protection laws also fail to state a claim, because they are barred by the parties' agreement that Washington law governs. And their implied contract and unjust enrichment claims fail to state a claim because Plaintiffs admit that they agreed to an express contract (the Conditions of Use) and, as detailed below, do not plead other essential elements.

The Complaint should be dismissed with prejudice.

## II. BACKGROUND[1]

### A. Automatic Content Recognition Technology and Amazon Fire TV.

ACR is a widely-used Smart TV technology that, when enabled, attempts to identify what is being displayed on a user's TV. *See* Compl. ¶¶ 3, 33, 42. The technology works by creating a digital fingerprint based on a sample of audio or pixel data for the content playing on a television, and then attempting to match that fingerprint with a reference database. *Id.* ¶ 42. Certain Amazon Fire TV televisions, as well as televisions that are manufactured by third parties and run Fire TV software ("Fire TV"), are equipped with ACR. *See id.* ¶¶ 37, 40. When ACR technology is available on a television, users have the option to disable it. *Id.* ¶ 67; *see id.* ¶ 18. Amazon makes clear that it "never sells or rents customers' personal data," and Plaintiffs do not allege any facts to the contrary. *Id.* ¶ 69; *see also id.* ¶ 52.

### B. Amazon's Notification to Customers That Their Viewing Data May Be Collected.

Amazon repeatedly informs Fire TV users that it collects data related to the use of their televisions. As alleged in the Complaint, when a user first sets up their television, they are presented with a screen notifying them that "Amazon processes and retains audio, interactions, viewing, and other data in the cloud to provide and improve our services." *Id.* ¶ 58. On that same screen, users are presented with two buttons labeled "Continue" and "Store Use," which are located directly above the statement "By clicking 'Continue' or 'Store Use,' you agree to Amazon's Conditions of Use at

[1] For purposes of this motion, Amazon treats the allegations of the Complaint as if they were true. Amazon notes, however, that many of the Complaint's allegations, including the Complaint's depiction of the setup screens and privacy settings presented to a user of a Fire TV television equipped with ACR technology, are false and materially misleading. Much more could be said, but Amazon does not do so here given that the complaint clearly fails to state a claim or even plead injury-in-fact in any event.

www.amazon.com/conditionsofuse and all the terms found at www.amazon.com/devicesupport or here." *Id.* Plaintiffs admit that they agreed to the Conditions of Use. *Id.* ¶ 14 (alleging that Plaintiffs "contracted with" Amazon "pursuant to … Amazon's Conditions of Use"). The same screen also refers directly to and hyperlinks "Amazon's Privacy Notice." *See id.* ¶ 58.

The first section in Amazon's Conditions of Use at the time Plaintiffs set up their televisions was titled "PRIVACY."[2] *See* RJN, Declaration of Eugide Matondo ("Matondo Decl."), Ex. A at 1; *see also* Compl. ¶¶ 17, 22, 58 (alleging the dates Plaintiffs purchased and started using their televisions). That section states, "Please review our Privacy Notice, which also governs your use of Amazon Services, to understand our practices." RJN, Matondo Decl., Ex. A at 1. In that sentence, "Privacy Notice" is hyperlinked directly to Amazon's Privacy Notice. *Id.*

Amazon's Privacy Notice informs users that "[w]e automatically collect and store certain types of information about your use of Amazon Services, including information about ***your interaction with*** products, ***content***, and services available through Amazon Services." *Id.*, Ex. B at 1 (emphasis added). The Privacy Notice also provides "Examples of the information we collect and analyze include . . . ***content interaction information, such as content downloads, streams, and playback details***, including duration and number of simultaneous streams and downloads." *Id.* at 6 (emphasis added).

Although the Complaint includes conclusory allegations that Plaintiffs "did not (and could not) consent to" data collection through ACR, those assertions are contradicted by the factual allegations of the Complaint. *Id.* § B.ii (cleaned up). Specifically, the Complaint purports to outline the consent flow applicable to Fire TV,[3] and alleges that the "[c]onsent is not informed because Amazon buries its privacy controls in a nested, non-intuitive menu hierarchy." *Id.* ¶ 63. But the Complaint elsewhere admits that

---

[2] These documents are incorporated into the Complaint by reference, "as the complaint refers extensively to the" Conditions of Use, which include the Privacy Notice, and Plaintiffs' "claims depend[] on [their] allegations that [they] did not consent to Defendant[s'] data practices." *Washington v. Flixbus*, Inc., 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025); *see also* Request for Judicial Notice ("RJN") filed contemporaneously herewith.

[3] As noted above, the Complaint's allegations regarding the setup and consent flow process are incomplete and inaccurate and omit important disclosures relating to ACR. For the purpose of this motion to dismiss, however, Amazon treats the Complaint's allegations as if they were true.

Plaintiffs were notified while setting up their televisions that Amazon collects "viewing" and "other data," *id.* ¶ 58, and that Plaintiffs agreed to Amazon's Conditions of Use and Privacy Notice, which disclose that Amazon may collect information about, among other things, customers' interaction with content. *Id.* ¶¶ 14, 58; RJN, Matondo Decl., Ex. B at 6.

**C. Plaintiffs' Suit Based on Alleged Collection of Data Through ACR Technology.**

Plaintiffs Nancy Manypenny and Kenneth Enser are consumers who allege they purchased televisions with Fire TV. *See* Compl. ¶¶ 16-17, 21-22. Both allege that they use their televisions to watch and stream unspecified "television programs" and "video content" from various streaming services. *Id.* ¶¶ 17, 22.

Plaintiffs brought this lawsuit against four defendants, Amazon.com, Inc., Amazon.com Services LLC, Amazon Digital Services LLC, and Amazon Technologies, Inc. *Id.* ¶ 1. The Complaint does not identify which defendants engaged in the conduct specified in each allegation, and instead lumps all four defendants together with the defined term "Amazon." *Id.*

Plaintiffs' claims are premised on the assertion that ACR on their televisions "surreptitiously intercepted and disclosed the Sensitive Information that was communicated to and from Plaintiff[s] as [they] used [their] Fire TV, including every frame shown and word spoken in the programs [they] watched, applications [they] used, and other information displayed on [their] television screen through the normal course of use." *Id.* ¶¶ 19, 23. Plaintiffs do not specify what "Sensitive Information" was purportedly captured through ACR. Nor do they otherwise explain or define what constituted their "normal course of use" for their televisions. Although Plaintiffs assert that Defendants "knowingly disclos[ed] Plaintiffs' and Class members' personally identifiable Sensitive Information to advertising partners," *id.* ¶ 115, they do not allege any facts supporting this assertion; absent from the Complaint are any facts specifying what information allegedly was disclosed, or what "advertising partners" received it.

Plaintiffs assert eight causes of action: violations of the VPPA, common law intrusion upon seclusion, violations of unspecified "State Consumer Fraud Acts," violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), violations of the New York General Business Law ("GBL"), breach of implied contract, and unjust enrichment.

## III. ARGUMENT

### A. Plaintiffs' Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1), Because Plaintiffs Fail to Establish Article III Standing.

To meet the requirement of Article III standing, Plaintiffs must demonstrate a "concrete" injury-in-fact that "actually exist[s]," meaning it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up). A "bare procedural violation" of a statute, without any concrete harm, will not constitute an "injury in fact." *Id.* at 341; *see also Lugo v. Amazon.com, Inc.*, 2023 WL 6241200, at *3 (W.D. Wash. Sept. 26, 2023) (Lin, J.) (dismissing privacy claim for lack of standing where "allegations in Plaintiffs' Complaint amount to a bare procedural violation and cannot establish an injury in fact"). Instead, even if Plaintiffs are able to plead a statutory violation, they must show that "the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). In determining whether Plaintiffs have made this showing, the Court "look[s] to the specific underlying harm [alleged] by the plaintiff[s] and compare[s] it, in detail, to a specific common-law tort." *Id.* at 791.

Although in *Eichenberger v. ESPN, Inc.*, the Ninth Circuit held that a VPPA violation "presents the precise harm and infringe[s] the same privacy interests Congress sought to protect" without analyzing whether the plaintiff's harm was analogous to a common-law tort, that decision predates and is inconsistent with *TransUnion* and *Popa*. 876 F.3d 979, 984 (9th Cir. 2017) (alterations in original); *see also Popa*, 153 F.4th at 793-94 (casting doubt on *Eichenberger* because "we might analyze [the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*").[4]

As the Ninth Circuit made clear in *Popa*, the only common-law torts implicated by Plaintiffs' privacy-based claims are intrusion upon seclusion and the public disclosure of private facts. *Popa*, 153 F.4th at 793-94. Both require Plaintiffs to show that there was an intrusion or disclosure of data that was "highly offensive" to a reasonable person and over which they have a "reasonable expectation of privacy."

---

[4] In any event, *Eichenberger* is also inapplicable here because Plaintiffs have not adequately alleged the required elements of a VPPA claim. *See infra* at § III.B.1.

*Id.*; *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). Plaintiffs fail to satisfy these requirements—and thus fail to allege any injury-in-fact—because (1) they do not plead any "highly offensive" intrusion or disclosure of personal or sensitive data, and (2) they were notified about the collection of their data and thus have no reasonable expectation of privacy over it.

**1. Plaintiffs Do Not Allege a "Highly Offensive" Intrusion or Disclosure.**

Plaintiffs lack standing under *Popa* because they fail to plead any harm similar to the "highly offensive" interference or disclosure actionable at common law. In *Popa*, the Ninth Circuit held that the use of website analytics technology to collect "over 30 different categories" of data about a plaintiff's "entire visit to the website" did not establish a concrete privacy injury. 153 F.4th at 786-87, 794-95. The court explained that the plaintiff did not allege "how the tracking of her interactions with [defendant's website] caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," as required to establish a concrete injury-in-fact. *Id.* at 791. The mere fact that the tracking technology "*could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information)" did not suffice, because the plaintiff "did not plausibly allege the infringement of any such privacy interest." *Id.*

Here, Plaintiffs ostensibly assert injuries based on Amazon's purported collection and disclosure of data, but the Complaint fails to establish a concrete injury from either action. Plaintiffs plead no injury based on *disclosure* for the simple reason that the Complaint makes no factual allegations that Amazon shared Plaintiffs' data (or any data) with a third party. To be sure, the Complaint includes conclusory allegations that unspecified data was "disclosed" and that Amazon violated the VPPA by "disclosing" data "to advertising partners." Compl. ¶¶ 19, 23, 115. But these vague assertions are plainly insufficient to plead a disclosure causing concrete injury to Plaintiffs. Not only do they fail to even specify what data was purportedly disclosed, but they also separately fail to allege to "who[m] [Amazon purportedly] disclosed this information to, when the disclosures occurred, and how they occurred, let alone that these acts particularly injured the named Plaintiffs." *Mendoza v. Microsoft Inc.*, 2014 WL 4540213, at *3, *5 (W.D. Wash. Sept. 11, 2014) (dismissing complaint, including VPPA claim, for lack of standing).

Plaintiffs likewise fail to allege an injury based on Amazon's supposed *collection* of data through ACR, for the same reasons that the Ninth Circuit ruled the *Popa* plaintiff lacked standing. Plaintiffs attempt to claim injury simply based on the alleged presence of ACR on their televisions. But under *Popa*, allegations that the use of the technology at issue "*could* be offensive in particular circumstances," are insufficient. *Popa*, 153 F.4th at 791 (allegations that session replay technology was present insufficient to plead injury). Instead, a plaintiff must allege that their "embarrassing, invasive, or otherwise private information [was] collected." *Id.* Here, Plaintiffs' broad and conclusory assertions that Amazon used ACR technology to collect the "information displayed on [their] television screen through the normal course of use" fail to specify any information that could be used to identify them, let alone that the information was sufficiently embarrassing, invasive, or private that it gives rise to a concrete privacy injury. Compl. ¶¶ 19, 23; *see In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2-*3 (N.D. Cal. Apr. 6, 2026) (dismissing complaint predicated on privacy injury for lack of standing because Plaintiffs did not "identify [any] specific personal information [they] disclosed that implicates a protectable privacy interest").

Another court in this Circuit recently dismissed a complaint for lack of standing, notwithstanding that it contained far more detailed allegations than the allegations at issue here. *See Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, at *1-*2, *7 (C.D. Cal. Apr. 20, 2026) (dismissing complaint alleging disclosure of video viewing history information for lack of standing). In *Diaz*, plaintiffs alleged the defendant's use of third-party pixels caused their "personally identifiable information [to be] shared to Google and Microsoft." *Id.* at *4. They specified four examples of information collected and shared: "(1) the title and URL of 'specific videos watched by minors,' (2) 'unique identifier[s] that Google and Microsoft use to identify' users, (3) 'information that is commonly used to create a browser fingerprint, such as [users'] IP address[es], language selection, screen resolution, microprocessor type, internet browser software and version number, and operating system software and version number,' and (4) records of how 'user[s] move[] their mouse[s], how far they scroll[], and the areas of the webpage that the user[s] spent the most time reviewing.'" *Id.* (alterations in original). But even these allegations failed to plead any concrete injury, for two independent reasons. First, Plaintiffs did not allege any data was

disclosed that "by itself link[ed] [plaintiffs'] watch history to them as individuals." *Id.* And second, "[e]ven accepting their allegations as true, Plaintiffs d[id] not present any evidence that the disclosure of their [data] caused embarrassment, was invasive, or that the videos they watched were at all 'private.'" *Id.* Plaintiffs' allegations here—which do not even attempt to specify any data Amazon purportedly collected about them—fail for the same reasons.

Because Plaintiffs' vague assertions fail to identify any highly offensive intrusion or disclosure, they lack Article III standing and this Court therefore lacks subject-matter jurisdiction. *See, e.g.*, *id.*; *Hughes v. Vivint, Inc*., 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (holding that plaintiff lacked standing because her "Complaint [wa]s vague as to many, if not all, of the details surrounding her use of the Website and what specific information was captured").

**2. Plaintiffs Had No Expectation of Privacy in Data Purportedly Collected.**

Plaintiffs lack Article III standing for another reason: they were notified of Amazon's alleged collection of data when they set up their televisions, and a plaintiff "d[oes] not have a reasonable expectation of privacy in th[eir] information" when, as here, they are put on "clear notice" that the defendant may collect data about their usage of the services. *Lloyd*, 2024 WL 3325389, at *2 (affirming dismissal of claim that Meta "impermissibly track[ed] [plaintiff's] online activity" because Meta's "data policy" established no reasonable expectation of privacy); *see Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. March 5, 2024) (affirming dismissal of claim because Google's "Privacy Policy" disclosed that it collects data about users' "activity on third-party apps"); *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025) ("plaintiff cannot have a reasonable expectation of privacy if they consented to the intrusion"); *see also Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (dismissing claim for lack of Article III standing because plaintiff "lack[ed] an expectation of privacy in the data at issue").

Amazon informed customers, including Plaintiffs, that it collects data about the content viewed when customers use its products or software. Specifically, Plaintiffs admit that they agreed to Amazon's Conditions of Use, which incorporates Amazon's Privacy Notice. *See* Compl. ¶¶ 14, 58; RJN, Matondo Decl., Exs. A, B. Amazon's Privacy Notice, in turn, informed Plaintiffs that Amazon automatically

collects and stores "information about your interaction with products, content, and services available through Amazon Services." RJN, Matondo Decl., Ex. B at 1. The Notice also identifies "content interaction information, such as content downloads, streams, and playback details, including duration and number of simultaneous streams and downloads" as "[e]xamples of the information we collect and analyze." *Id* at 6.[5] Because Plaintiffs were informed that Amazon collected data about the content that played on their televisions, they cannot establish a reasonable expectation of privacy in that data, and they thus lack standing.

**B. Plaintiffs Fail to State a Claim Under Rule 12(b)(6).**

Even if Plaintiffs somehow established Article III standing—which they cannot—the Complaint should nevertheless be dismissed because Plaintiffs fail to "state a claim to relief that is plausible on its face" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim, Plaintiffs must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Claims sounding in fraud must be pled with particularity." *Nicholas v. Amazon.com, Inc.*, 740 F. Supp. 3d 1099, 1102 (W.D. Wash. 2024) (citing Fed. R. Civ. P. 9(b)). "[A] plaintiff need not specifically label a cause of action as fraud; claims that are grounded in fraud or that sound in fraud must also meet Rule 9(b) requirements." *Id.* at 1102-03 (cleaned up).

**1. Plaintiffs Fail to State a VPPA Claim.**

The VPPA makes it unlawful for a "video tape service provider" to "knowingly disclose[], to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). "[I]n order to plead a plausible claim under [the VPPA], a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any

[5] Although Plaintiffs do not plausibly allege that Amazon shared their personal data with any third party, *supra* at § III.A.1, they were also informed of the possibility that personal information may be available to "third party service providers" who provide Amazon "marketing assistance." RJN, Matondo Decl., Ex. B at 2.

customer[sic]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

The essence of a VPPA claim is disclosure of personally identifiable information, but the Complaint fails to plausibly allege *any* disclosure, much less a knowing disclosure, by Amazon to another person. Although the Complaint is rife with rhetoric maligning Amazon for using ACR data for its own purposes, it does not plausibly allege that Amazon shared ACR data with any third party. *See also supra* at § III.A.1. The closest it comes is a conclusory assertion that Amazon "knowingly disclos[ed] . . . personally identifiable Sensitive Information to advertising partners." Compl. ¶ 115. This statement is insufficient to state a claim, for two reasons.

First, the allegation of disclosure is not supported by any factual allegations, nor does it identify any third party to whom Amazon purportedly disclosed data or when or how any such disclosure occurred. *See Rodriguez v. Sony Computer Ent. Am. LLC*, 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012) (dismissing VPPA claim where plaintiffs failed "to state that a disclosure has affirmatively taken place" or specify "the person(s) or entity to whom such disclosure was made"). Plaintiffs' failure to allege any facts showing that any data was "disclosed" is fatal to their VPPA claim. 18 U.S.C. § 2710(b)(1); *see also Mendoza*, 2014 WL 4540213, at *3 (dismissing VPPA claim that failed to allege "who [the defendant] disclosed th[e] information to").

Second, even if Plaintiffs had adequately alleged a third-party disclosure, the Complaint fails to allege that the disclosure implicated their "personally identifiable information." § 2710(b)(1). To be sure, Plaintiffs assert, in general and conclusory terms, that ACR collects information displayed on a user's Fire TV screen, which "necessarily includes . . . personally identifiable information" because ACR purportedly "may capture" information like email addresses. Compl. ¶ 50. But the Complaint fails to plead any *facts* demonstrating that there was an actual disclosure of information that would allow a third party to identify Plaintiffs individually, as required to state a VPPA claim. *See Eichenberger*, 876 F.3d at 986 (affirming dismissal of VPPA claim because of the absence of any allegations that disclosed data could be used to "identify an individual").

### 2. Plaintiffs Fail to State an Intrusion-Upon-Seclusion Claim.

Plaintiffs also fail to plausibly allege a claim for intrusion upon seclusion. To plead this claim, Plaintiffs must allege: "(1) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or her private affairs; (2) a legitimate and reasonable expectation of privacy with respect to that matter or affair; (3) an intrusion that would be highly offensive to a reasonable person; and (4) damage proximately caused by the defendant's conduct." *Hennessey v. Radius Glob. Sols. LLC*, 2024 WL 5119824, at *14 (W.D. Wash. Dec. 16, 2024) (citation omitted).

Plaintiffs' allegations are insufficient for the same two reasons that they lack standing. First, they do not plead an "intrusion that would be highly offensive to a reasonable person." *Id.* As explained above, Plaintiffs do not identify any "embarrassing, invasive, or otherwise private information collected by" Amazon. *Popa*, 153 F.4th at 791; *see supra* at § III.A.1. As a result, "Plaintiffs do not allege that the data allegedly collected by [Amazon] is sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022).

Second, Plaintiffs cannot plausibly allege either (i) an "intentional intrusion" or (ii) a "reasonable expectation of privacy," because they consented to Amazon's Conditions of Use and the Privacy Notice incorporated therein. *Supra* at § II.B. Under Washington law, "[a]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (internal quotation omitted). Accordingly, "a person's consent to the allegedly intrusive act 'negates the element of intentional intrusion upon the plaintiff's private affairs.'" *Id.* (quoting *Budsberg v. Trause*, 2015 WL 7259958, at *6 (Wash. Ct. App. Nov. 17, 2015)). Likewise here, Plaintiffs' consent negates any reasonable expectation of privacy over the sharing of data of which the person has notice. *Lloyd*, 2024 WL 3325389, at *2 (data policy defeated reasonable expectation of privacy); *Hammerling*, 2024 WL 937247, at *3 (similar); *M.D.*, 2025 WL 2710095, at *4 (no "reasonable expectation of privacy" if plaintiffs "consented to the intrusion"); *see also supra* at § III.A.2. Because Plaintiffs admit that they agreed to Amazon's Conditions of Use, and were thus notified that Amazon may "collect and analyze" "content interaction information," they cannot plead either that

Amazon committed an "intentional intrusion" or that they had a "reasonable expectation of privacy" in such data—each of which is a necessary element of the claim. Compl. ¶¶ 14, 58; Matondo Decl., Ex. A at 1; Ex. B at 6; *see Gray*, 653 F. Supp. 3d at 860 (dismissing intrusion upon seclusion claim based on collection of voice data where plaintiffs agreed to terms of service that permitted the collection).

### 3. Plaintiffs' Consumer Protection Claims Must Be Dismissed.

#### a) Plaintiffs' Out-of-State Consumer Protection Claims Must Be Dismissed Because Washington Law Governs Plaintiffs' Claims.

Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, New York General Business Law, and other state consumer fraud laws should be dismissed because Plaintiffs specifically agreed that Washington law would apply to any claims arising from their use of Fire TV software. As explained above, Plaintiffs admit that they "contracted with" Amazon by agreeing to Amazon's Conditions of Use. Compl. ¶ 14. The Conditions of Use provide that Washington law governs all disputes between Plaintiffs and Amazon:

> By using any Amazon Service, you agree that applicable federal law, and *the laws of the state of Washington*, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

Ex. A at 4 (emphasis added). Because the parties agreed that Washington law governs, Plaintiffs' claims brought under the laws of other states must be dismissed. *See In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263-66 (W.D. Wash. 2023), *aff'd*, 2025 WL 2268252 (9th Cir. Aug. 8, 2025) (Lin, J.) (dismissing California statutory claim based on choice-of-law provision in Amazon's Conditions of Use); *Romero v. Amazon.com Inc.*, 2025 WL 2409943, at *2, *3 (W.D. Wash. Aug. 20, 2025) (same); *Crowell v. Audible Inc.*, 806 F. Supp. 3d 1216, 1230 (W.D. Wash. 2025) (same).

#### b) In Any Event, Plaintiffs' Consumer-Protection Claims Should Be Dismissed Because They Fail to State a Claim.

Even putting aside the choice-of-law provision barring Plaintiffs' state consumer protection law claims, those claims fail for other reasons.

***"State Consumer Fraud Acts" Claim***. In Count III, Plaintiffs assert violations of unspecified "State Consumer Fraud Acts." Plaintiffs' broad assertions, which fail to allege which state laws Plaintiffs

claim were violated, let alone how the elements of each such claim are purportedly met, are plainly deficient. As courts have explained in rejecting similar blanket consumer protection statute claims, "[a] cursory listing of the other states' statutes is insufficient to satisfy *Twombly* and *Iqbal*'s pleading requirements." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 994 (W.D. Wash. 2022).

***ICFA Claim***. Plaintiff Manypenny's ICFA claim fails for multiple reasons. To start, the ICFA claim purports to rely on "false and/or misleading" representations and thus must be pleaded with particularity pursuant to Rule 9(b). Compl. ¶¶ 135, 137-38; *see Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (Illinois CFA claims "grounded in fraud" are subject to Rule 9(b)). Manypenny fails to meet this standard. First, she does not adequately allege a deceptive act or practice; although she asserts that Amazon made "false or misleading representations or omissions," she does not specify *what* representation or omission was false or misleading or what made it false or misleading, as required by Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal under Rule 9(b) where plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged").

Second, Manypenny also does not allege that she "saw, heard, or read" any of the purported misrepresentations, as required to demonstrate proximate cause under ICFA. Her claim must be dismissed because she fails to identify a single Amazon webpage or disclosure that she actually saw or read, much less one containing a misrepresentation. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002) (affirming dismissal where plaintiff did not allege he observed the challenged advertisements).

Third, she does not sufficiently allege any actual damages, much less with the particularity required by Rule 9(b). *See Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1043 (N.D. Ill. 2021) (plaintiff must "assert[] with particularity" actual loss). Her conclusory assertion that she "did not receive the benefit of the bargain" is insufficient to state an ICFA claim. Compl. ¶ 143; *see Mitchell v. Credit Sols., LLC*, 2023 WL 12193813, at *3, *4 (N.D. Ill. Sept. 14, 2023) (dismissing ICFA claim where plaintiff failed to plead "facts suggesting that he was put in a measurably worse financial position"); *Patterson v. SLI, LLC, et al.*, 2026 WL 1786230, at *6, *7 (N.D. Ill. June 22, 2026) (dismissing claim where plaintiff

failed to adequately allege he was "deprived of the benefit of [the] bargain" because he did not allege products "did not work as intended or that there were cheaper alternative[s]").

***GBL Section 349 Claim***. Plaintiff Enser's GBL Section 349 claim fails for similar reasons. First, he does not allege any acts that "are misleading in a material way." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). Although Enser challenges the presence of ACR on his television, he "does not explain how any of the defendants engaged in any materially misleading conduct through" use of ACR, especially in light of the disclosures that he acknowledges receiving. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 287 (S.D.N.Y. 2023) (dismissing GBL claim). To be sure, he implies that Amazon's disclosures should be more robust, but he fails to allege that any specific statement in the disclosures is misleading. *See Owens v. Aspen Funding LLC*, 2011 WL 4024820, at *12 (W.D.N.Y. Sept. 9, 2011) (dismissing GBL claim because allegations that documents "contained language that was difficult to understand" does not plausibly allege a deceptive act); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed.") (quoting *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (1st Dep't 2001)); *supra* at § II.B.

Second, Enser does not plead causation, because he fails to allege that he ever saw or reviewed any of the purportedly misleading statements. Because the GBL requires Enser to allege he purchased his Fire TV television "on account of a materially misleading practice," his failure to allege that he encountered misleading acts from Amazon prior to purchasing his television is fatal to his claim. *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *see also Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S. 2d 45, 47 (N.Y. App. Div. 2004) (affirming dismissal of GBL claims where plaintiff did not "state[] in his complaint that he saw any of [the allegedly misleading] statements"); *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (affirming dismissal of GBL claims where plaintiffs did not allege that they ever reviewed the challenged advertisements).

Third, Enser's conclusory assertions that he "would not have purchased the Products had [he] known the truth" and that he "overpaid for the Products" are insufficient to plead injury. Compl. ¶ 164. "Under New York law, a plaintiff's allegation that she would not have purchased a product but for a

deceptive act, standing alone, is not a cognizable injury because it conflates the deceptive act with the injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69-70 (9th Cir. 2019). And similarly, the bare assertion that a plaintiff overpaid or paid a "premium" is insufficient without alleging how much they paid, and how much they would have paid absent the alleged deception. *Id.*

***GBL Section 350 Claim***. Plaintiff Enser's GBL Section 350 claim fails for the same reasons as his Section 349 claim. *See Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) ("A claim of false advertising under GBL § 350 must meet all of the same elements as a claim under GBL § 349."). In addition, Section 350 requires a false *advertisement*, and the Complaint pleads none. *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018) (rejecting GBL Section 350 claim based on privacy policy "because it does not relate to advertising").

**4. Plaintiffs Fail to State a Claim for Breach of Implied Contract.**

Plaintiffs also fail to plausibly allege their breach of implied contract claims. As a threshold matter, Plaintiffs cannot bring an implied contract claim because they admit that they agreed to an express contract that governs the use of their Fire TV televisions: the Conditions of Use and the Privacy Notice incorporated therein. Compl. ¶¶ 14, 58. Where, as here, the Complaint alleges an express contract covering the subject matter, a claim for breach of implied contract must be dismissed. *See Woodard v. Boeing Emps. Credit Union*, 2023 WL 4847126, at *5 (W.D. Wash. July 28, 2023) (dismissing implied contract claim because claim was governed by express contract); *Krefting v. Kaye-Smith Enters. Inc.*, 2023 WL 4846850, at *6 (W.D. Wash. July 28, 2023) (dismissing implied contract claim predicated on privacy violation because express contract contained "PRIVACY NOTICE" governing the dispute).

Even if Plaintiffs' claims were not the subject of an express contract, they would still fail because Plaintiffs have not alleged facts sufficient to plead an implied contract. Under Washington law, "an implied contract in fact exists if there is an offer; there is an acceptance; the acceptance is in the terms of the offer; it is communicated to the offeror; there is mutual intention to contract; and there is a meeting of the minds of the parties." *Covarrubias v. Am. Airlines, Inc.*, 2011 WL 13100749, at *2 (W.D. Wash. Apr. 21, 2011) (citing *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 301 P.2d 759, 762 (Wash. 1956)).

Plaintiffs have not plausibly alleged an offer, acceptance, or meeting of the minds on any of the purported implied contract terms asserted in the Complaint. They base their claim on a professed "expectat[ion] that the Amazon Fire TVs would function as advertised," but fail to identify a single advertisement or representation from Amazon that differed from the product they received. Compl. ¶¶ 168, 169. Nor does the Complaint identify any definite, enforceable term to which the parties mutually assented (or, as a consequence, could have been breached). *Id.* ¶ 170. *See Keystone Land & Dev. Co. v. Xerox Corp.*, 194 P.3d 945, 949 (Wash. 2004) ("the terms assented to must be sufficiently definite"); *Covarrubias*, 2011 WL 13100749, at *2 (dismissing implied contract claim because "vague assertions regarding lack of notice, expectations, and self-imposed obligations" are insufficient to plead implied contractual obligation).

Plaintiffs' claims are deficient for the additional reason that they "fail to allege the existence of a[ny] valid [implied] contract" regarding ACR or their data that is "supported by mutual assent and consideration." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1090-91 (W.D. Wash. 2024) (Lin, J.). Indeed, there is no allegation that Enser exchanged any consideration with Amazon at all: he purportedly purchased a *Toshiba* television from *Best Buy*. Compl. ¶ 22. And although Plaintiff Manypenny alleges that she purchased from Amazon a Fire TV television that "would function as advertised," she fails to plausibly allege any payment in exchange for any specific promise related to the use of ACR. *Id.* ¶ 169. *See Nienaber*, 733 F. Supp. 3d at 1090-91 (dismissing implied contract claim because there were "no allegations that [plaintiff] paid Defendant for any . . . services, nor has she made any additional allegations regarding any consideration received by Defendant for its promise" that it allegedly breached).

Finally, both Plaintiffs' claims must be dismissed because they have not pled any damages recoverable in contract. Plaintiffs allege damages based on "diminution of the value" of their personal information, Compl. ¶ 123, but "[c]ourts in this circuit have dismissed cases where, like here, plaintiff's injury is based on 'the loss of the inherent value of their personal data.'" *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1066 (C.D. Cal. 2024) (quoting *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1089 (N.D. Cal. 2023)).

Plaintiffs' conclusory allegations that they seek to recover the "benefit of their bargain" fare no better. To recover on a benefit-of-the-bargain theory, Plaintiffs "must do more than allege that [they] did not receive the benefit [they] thought [they were] obtaining." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). Instead, they must plead that they "did not receive a benefit for which [they] actually bargained." *Id.* Plaintiffs do not plead any benefit that they bargained for but did not receive. Compl. ¶¶ 17, 22; *see Yountville Invs., LLC v. Bank of Am., N.A.*, 2009 WL 2342462, at *10 (W.D. Wash. July 28, 2009) (benefit-of-the-bargain theory precluded where "[p]laintiff received exactly what it bargained for"). And although Plaintiffs assert that they expected "ordinary televisions," but received televisions equipped with ACR, they fail to explain how the availability of ACR technology on their televisions diminishes their value. Compl. ¶ 155. To the contrary, the Complaint concedes that the technology can be disabled, and Manypenny alleges that she already turned it off. *Id.* ¶¶ 18, 67. Plaintiffs' implied contract claim must be dismissed.

### 5. Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claim should also be dismissed. To state a claim for unjust enrichment, Plaintiffs must plead facts showing (1) Amazon received a benefit, (2) at Plaintiffs' expense, and (3) the circumstances make it unjust for Amazon to retain the benefit without payment. *In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428, at *5 (W.D. Wash. Mar. 27, 2023); *see also Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (reciting these elements). Plaintiffs have failed to state a claim for at least three reasons.

First, as with their implied contract claim, Plaintiffs cannot state a claim for unjust enrichment because they allege an express contract covers the same subject matter. *See Woodard*, 2023 WL 4847126, at *5 ("Because an express contract covers the same subject matter, Plaintiff cannot maintain [a] separate claim[] for . . . unjust enrichment."); *Sargsyan v. Amazon.com Inc*, 2026 WL 607715, at *2 (W.D. Wash. Mar. 4, 2026) (dismissing unjust enrichment claim where complaint separately alleged that "contract was formed between Plaintiff and Amazon pursuant to Amazon's published" Conditions of Use); *supra* at § II.B.

Second, Plaintiffs' unjust enrichment claim fails because it is derivative of their other claims. Plaintiffs assert that they conferred a benefit on Amazon because it collected their data through ACR technology on their televisions. Compl. ¶ 174. But these repackaged allegations rely on the same theory of liability as Plaintiffs' intrusion upon seclusion, consumer protection, and breach of implied contract claims, and therefore must be dismissed for the same reasons. *See Geraci v. Homestreet Bank*, 203 F. Supp. 2d 1211, 1212 (W.D. Wash. 2002), *aff'd*, 347 F.3d 749 (9th Cir. 2003) (dismissing unjust enrichment claim because it was "totally derivative" of statutory and breach of contract claim).

Third, and finally, Plaintiffs do not allege that any benefit conferred on Amazon was at their expense. Their assertions that they suffered "invasion of privacy" or "diminution of the value of their" data, Compl. ¶ 175, do not adequately plead any expense to them. "In Washington, alleging a non-economic loss, such as a loss of privacy, is insufficient [to establish an expense to plaintiff] because 'Washington courts have not applied the doctrine of unjust enrichment outside the context of an 'expense' stemming from some tangible economic loss to a plaintiff.'" *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *11 (W.D. Wash. Mar. 4, 2025) (quoting *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1299 (W.D. Wash. 2021) (alterations in original)); *Street v. Amazon.com Servs., LLC*, 2022 WL 3683811, at *1, *5 (W.D. Wash. Aug. 25, 2022) (dismissing unjust enrichment claim predicated on privacy violation because Plaintiffs failed to allege any benefit conferred at their expense); *see supra* at § III.B.4.

## IV. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed. Because the defects described herein cannot be cured by amendment, dismissal should be with prejudice.

By: _s/ Charles C. Sipos_______________
Charles C. Sipos (Bar No. 32825)
Lauren J. Tsuji (Bar No. 55839)
**ASHURST PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
206-359-8000
*CSipos@ashurstperkins.com*
*LJTsuji@ashurstperkins.com*

By: _/s Jonathan M. Sperling_______________
Jonathan M. Sperling (*Pro Hac Vice*)
Jordan Joachim (*Pro Hac Vice*)
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001-2170
212-841-1000
*jsperling@cov.com*
*jjoachim@cov.com*

Marianne Spencer (*Pro Hac Vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
202-662-6000
*mspencer@cov.com*

*Attorneys for Defendants*
*AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AMAZON DIGITAL SERVICES LLC and AMAZON TECHNOLOGIES, INC.*

I certify that this memorandum contains 7,060 words, in compliance with the Local Civil Rules.