THE HONORABLE TANA LIN

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

NANCY MANYPENNY and KENNETH ENSER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, AMAZON DIGITAL SERVICES LLC, and AMAZON TECHNOLOGIES, INC.,

Defendants.

Civil Action No: 2:26-CV-01534-TL

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)6**

NOTE ON MOTION CALENDAR: AUGUST 25, 2026

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................6

LEGAL STANDARD ............................................................................................8

ARGUMENT .......................................................................................................9

A. Plaintiffs Allege Concrete Article III Injuries ....................................................9

1. Continuous audiovisual recording inside a home is the paradigmatic case of the traditionally recognized tort of intrusion upon seduction ..................................9

*2. Eichenberger* remains binding, and Popa says so ..........................................13

B. Plaintiffs' Claims Should All Survive Under Rule 12(b)(6) ................................14

1. Plaintiffs State a Viable Claim Under the VPPA...........................................14

a. The Complaint does not merely allege internal analytics ..........................14

b. The ACR dossier is personally identifiable information ...........................16

c. Amazon's boilerplate is not VPPA consent...............................................17

2. Plaintiffs State a Viable Claim for Intrusion Upon Seclusion .........................17

3. Plaintiffs Have Adequately Pleaded Viable Consumer Protection Claims ......20

a. If Amazon's Choice-of-Law Clause Bars Out-of-State Consumer Protection Claims, It Permits a Nationwide Claim Under the WCPA ........................20

b. Count III identifies the statues it invokes1Manypenny pleads an ICFA claim with particularity .........................................................................................22

c. Enser adequately pleads a viable GBL claim ...........................................24

4. Plaintiffs' Implied Contract Claim Should Survive Dismissal ........................27

5. Count VIII Pleads Unjust Enrichment in the Alternative ................................30

CONCLUSION ...................................................................................................32

# TABLE OF AUTHORITIES

Cases Page

*Adams v. Target Corp.*,
2014 WL 12558290 (C.D. Cal. Mar. 3, 2014) .......... 21
*Armijo v. Yakima HMA, LLC*,
2012 WL 2576624 (E.D. Wash. July 3, 2012) .......... 17
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8
*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 7
*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. 2024) .......... 28
*Broder v. MBNA Corp*
722 N.Y.S.2d 524 (1st Dep't 2001) .......... 24
*Budsberg v. Trause*
2015 WL 7259958 (Wash. Ct. App. Nov. 17, 2015) .......... 19
*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 17
*Camasta v. Jos. A. Bank Clothiers, Inc*
761 F.3d 732 (7th Cir. 2014) .......... 22
*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 623 (N.D. Ill. 2024) .......... 14
*Chufen Chen v. Dunkin' Brands, Inc.*
954 F.3d 492 (2d Cir. 2020) .......... 24
*Cohen v. Casper Sleep Inc.*
2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......... 26
*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012) .......... 29
*Crowell v. Audible Inc.*,
806 F. Supp. 3d 1216 (W.D. Wash. 2025) .......... 19
*De Bouse v. Bayer,*
AG, 235 Ill. 2d 544, 922 N.E.2d 309 (2009) .......... 23
*Dietemann v. Time, Inc*
449 F.2d 245 (9th Cir. 1971) .......... 9, 29
*Discover Bank v. Ray*,
139 Wn. App. 723, 162 P.3d 1131 (2007) .......... 27
*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 17
*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 12, 13, 15, 16
*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) .......... 19
*Frame-Wilson v. Amazon.com, Inc*
591 F. Supp. 3d 975 (W.D. Wash. 2022) .......... 21

*Gale v. Int'l Bus. Machs. Corp.*,
9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ..... 25
*Gray v. Amazon.com, Inc.*
653 F. Supp. 3d 847 (W.D. Wash. Jan. 27, 2023) ..... 18
*Grossman v. GEICO Cas. Co.*,
2022 WL 1656593 (2d Cir. May 25, 2022) ..... 25
*Hammerling v. Google, LLC*,
No. 22-CV-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ..... 18
*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co*
37 N.Y.3d 169, 171 N.E.3d 1192 (2021) ..... 24
*Hoglund v. Meeks*,
139 Wn. App. 854, 170 P.3d 37 (2007) ..... 27
*Hughes v. Vivint, Inc.*
2024 WL 5179916 (C.D. Cal. July 12, 2024) ..... 11
*In re Facebook, Inc. Internet Tracking Litigation*
956 F.3d 589 (9th Cir. 2020) ..... 11, 19
*In re USA Today Co. Internet Tracking Litigation and Diaz v. Paramount Skydance Corp*
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ..... 11
*In re USA Today Co. Internet Tracking Litigation and Diaz v. Paramount Skydance Corp.*
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) ..... 11
*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..... 17
*Izquierdo v. Mondelez Int'l, Inc.*,
2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..... 25
*Jones v. Ford Motor Co.*
85 F.4th 570 (9th Cir. 2023) ..... 16,18
*Kearns v. Ford Motor Co*
567 F.3d 1120 (9th Cir. 2009) ..... 22
*Keystone Land & Dev. Co. v. Xerox Corp.*,
152 Wash. 2d 171, 94 P.3d 945 (2004) ..... 27
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..... 7, 8
*Krefting v. Kaye-Smith Enters., Inc.*,
No. 2:23-cv-00220-JNW, 2023 WL 4846850 (W.D. Wash. July 28, 2023) ..... 27
*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ..... 8
*Lloyd v. Facebook, Inc.*,
No. 23-15318, 2024 WL 3325389 (9th Cir. July 8, 2024) ..... 18
*Lugo v. Amazon.com, Inc.*
2023 WL 6241200 (W.D. Wash. Sept. 26, 2023) ..... 10
*M.D. v. Google LLC*
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ..... 19
*Mark v. Seattle Times*,
96 Wn.2d 473, 635 P.2d 1081 (1981) ..... 9
*Martin v. Meredith Corp*
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ..... 25

*Mendoza v. Microsoft Inc.*
2014 WL 4540213 (W.D. Wash. Sept. 11, 2014) .......... 11, 15
*Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*,
49 Wn.2d 363 (1956) .......... 26
*Mitchell v. Credit Solutions, LLC*,
2023 WL 12193813 (N.D. Ill. Sept. 14, 2023) .......... 23
*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 14
*Money Mailer, LLC v. Brewer*,
194 Wn.2d 111 (2019) .......... 28
*Naimi v. Starbucks Corp.*
798 F. App'x 67 (9th Cir. 2019) .......... 26
*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) .......... 28
*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 28
*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .......... 29
*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134, 776 N.E.2d 151 (2002) .......... 23
*Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*,
No. C22-0825-JLR, 2022 WL 4534422 (W.D. Wash. Sept. 28, 2022) .......... 29
*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .......... 26
*Owens v. Aspen Funding LLC*
2011 WL 4024820 (W.D.N.Y. Sept. 9, 2011) .......... 29
*Patterson v. SLI, LLC*,
2026 WL 1786230 (N.D. Ill. June 22, 2026) .......... 23
*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 21
*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 9,10,12,13
*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .......... 28
*Rodriguez v. Sony Computer Entertainment America LLC*,
2012 WL 12921066 (N.D. Cal. Apr. 20, 2012) .......... 15
*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 8
*Siegal v. GEICO Casualty Co.*
523 F. Supp. 3d 1032 (N.D. Ill. 2021) .......... 28
*Street v. Amazon.com Servs. LLC*,
No. C21-0912-JLR, 2022 WL 3683811 (W.D. Wash. Aug. 25, 2022) .......... 29, 30
*Thornell v. Seattle Serv. Bureau, Inc.*,
184 Wn.2d 793 (2015) .......... 21
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10,12,13

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) .................... 12
*Vance v. Microsoft Corp.*,
525 F. Supp. 3d 1287 (W.D. Wash. 2021) .................... 29
*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................... 22
*Woodard v. Boeing Emps. Credit Union*,
No. 23-CV-00033-JNW, 2023 WL 4847126 (W.D. Wash. July 28, 2023) .................... 27
*Wurtzburger v. Ky. Fried Chicken*,
2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) .................... 26

Statutes

18 U.S.C. § 2710(a)(3) .................... 15
18 U.S.C. § 2710(b)(1) .................... 14
18 U.S.C. § 2710(b)(2) .................... 14
18 U.S.C. § 2710(b)(2)(B)(i)-(iii) .................... 16
18 U.S.C. § 2710(b)(2)(D) .................... 16
18 U.S.C. § 2710(b)(2)(D)(i)–(ii) .................... 14
Minn. Stat. § 325I.02(6) .................... 10
N.Y. Gen. Bus. Law § 673(5) .................... 10
Wash. Rev. Code § 19.86.010 .................... 20
§ 2710(b)(2)(B) .................... 16

Rules

Fed. R. Civ. P. 8(d)(2)-(3) .................... 7, 27, 30
Fed. R. Civ. P. 15(a)(2) .................... 30

Other Authorities

Restatement (Second) of Torts § 652B .................... 9

# I. INTRODUCTION

Plaintiffs bought televisions that watch them back. The Complaint alleges every Fire TV utilizes software that continuously monitors and records whatever the user is watching, whenever the set is on; identifies what is playing; logs when and for how long; ties the result to the household; and leverages this information to sell targeted advertising to advertisers through Amazon's advertising platform. Compl. ¶¶ 6, 42-52. Amazon shipped TVs with this "feature" surreptitiously embedded, described it in vague and euphemistic fine print as processing "audio, interactions, viewing, and other data" to "provide and improve our services," and buried the controls to shut it off behind three different menus with labels like "Device Usage Data." *Id.* ¶¶ 58, 61-67. When Plaintiff Manypenny found the settings, she had to disable three of them separately. *Id.* ¶ 18. Notwithstanding those efforts, Amazon's own software updates may nonetheless turn these "features" back on. *Id.* ¶ 72.

In its present motion, Amazon contends that the Complaint never identifies what was captured by Amazon's ACR. Def.'s Mot. at 1. In reality, Plaintiffs' Complaint expressly alleges that "every frame shown and word spoken in the programs [they] watched, applications [they] used, and other information displayed on [their] television screen" was captured. Compl. ¶¶ 19, 23. Amazon further complains that Plaintiffs "fail to allege which state laws Plaintiffs claim were violated, let alone how the elements of each such claim are purportedly met." Def.'s Mot. at 12–13. That again ignores the allegations of Plaintiffs' Complaint, which cites to ten specific consumer protection statutes from ten states with "similar consumer fraud laws under the facts of this case." Compl. ¶ 94 n22.

Defendant's consent defense fares no better. Amazon attaches its Conditions of Use and Privacy Notice and asks the Court to find consent as a matter of law. *See* ECF Nos. 24-1, 24-2. In the same brief it tells the Court that the consent flow involves "important disclosures relating to ACR" that appear nowhere in the Complaint. Def.'s Mot. 2–3 nn.1, 3. They appear nowhere in Amazon's exhibits either. A defense that depends on disputed facts evidenced outside the pleadings is not a Rule

12 defense. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (a document that "merely creates a defense" ordinarily is not incorporated by reference, and incorporation may not be used to insert the defendant's "own version of events" into the complaint). A defense that depends on facts not in evidence is not a legal defense at all.

Next, Amazon argues that Plaintiffs' consumer protection statutory claims fail because the entire Nationwide Class is governed by Washington law. Def.'s Mot. at 12. The parties agree their choice-of-law provision governs which state's consumer protection statute applies to every consumer's claim—Washington's. Plaintiffs ask for leave to amend to bring their claim under the Washington Consumer Protection Act on behalf of the National Class.

Defendant also seeks dismissal of Plaintiffs' implied warranty claim because an express contract covers the subject matter. Def.'s Mot. at 15. Yet Defendant also argues that Plaintiffs' allegations "omit important disclosures relating to ACR" which presumably lie outside of the express warranty at issue because, while Defendant alludes to the existence of these "important disclosures," it never points to any of them in the Conditions of Use or Privacy Notice. *See* Def.'s Mot. at 3 n.3. Thus, the governance and scope of the express warranty at issue appear to be in dispute, and it would be premature to dismiss implied warranty claims.

Finally, Amazon seeks dismissal of Plaintiffs' unjust enrichment claims as duplicative of their other claims, but unjust enrichment has been adequately pleaded in the alternative and should survive at this stage of litigation. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015); Fed. R. Civ. P. 8(d)(2)-(3). Defendant also argues any benefit was not at Plaintiffs' expense because, according to Amazon, the data it took from Plaintiffs without authorization had no economic value. But this argument ignores a critical, additional economic injury alleged by Plaintiffs: their televisions spy on them in their homes and are therefore worth less than they bargained for. Compl. ¶¶ 53, 119, 136, 143, 155.

Defendant's Motion should be denied. Plaintiffs request leave to amend only their state consumer protection claims, and only if the Court agrees that Washington law applies to plaintiffs' out-of-state claims.

## II. LEGAL STANDARD

On a Motion to Dismiss under Rule 12(b)(1), the Court accepts the Complaint's allegations as true and draws every reasonable inference for Plaintiffs. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction*."); Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Rule 12(b)(6) asks whether the well-pleaded facts, accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Incorporation by reference lets the Court read Amazon's documents in full. It does not let Amazon use them to contradict the Complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint"); *see id.* at 1002 ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.").

## III. ARGUMENT

### IV. PLAINTIFFS ALLEGE CONCRETE ARTICLE III INJURIES

Defendant first argues that Plaintiffs lack Article III standing to challenge Amazon's systematic surveillance of consumers in their homes through their televisions because such surveillance has no "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." Def.'s Mot. at 5 (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th

Cir. 2025)). Amazon's misconduct at issue here represents a paradigmatic case of historically recognized legal injury, and Defendant's reliance on *Popa* to undermine this fact is misplaced.

## **V.** Continuous audiovisual recording inside a home is the paradigmatic case of the traditionally recognized tort of intrusion upon seclusion.

Plaintiffs allege that the ACR Tool intercepted identifying data from every program and piece of content they watched, inside their homes, without their authorization. Compl. ¶¶ 17, 19-20, 22-24. In other words, Amazon employed its ACR Tool to commit intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," where "the intrusion would be highly offensive to a reasonable person." *Mark v. Seattle Times*, 96 Wn.2d 473, 497, 635 P.2d 1081 (1981) (quoting Restatement (Second) of Torts § 652B), *cert. denied*, 457 U.S. 1124 (1982). This tort is not only well-established, it has been "traditionally recognized" for longer than ACR technology or the VPPA statute have existed.

The Ninth Circuit held that surreptitious electronic recording inside one's home states that harm more than 50 years ago. In *Dietemann v. Time, Inc.*, reporters entered the plaintiff's home by subterfuge, photographed him, and transmitted his conversation to a car outside. The court sustained liability and rejected the argument that a host assumes the risk of electronic capture, holding that a person "does not and should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording." 449 F.2d 245, 249 (9th Cir. 1971).

And while traditional intrusion involved a defendant "gain[ing] entrance by subterfuge to the home," *Mark v. Seattle Times*, 635 P.2d 1081, 1094 (1981), Amazon's Fire TV leverages modern technology and a more effective kind of subterfuge to get inside. Each Plaintiff bought their TV and carried it into their home not knowing it would spy on them and use what it learned to target them with advertising. Compl. ¶¶ 29–36. What *Dietemann*'s reporters accomplished with a hidden transmitter for one afternoon, Amazon accomplished continuously, whenever Plaintiffs watched TV.

Compl. ¶¶ 17, 22, 43, 49; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (naming "disclosure of private information" and "intrusion upon seclusion" as "chief among" intangible concrete injuries).

Amazon's lead case proves the point by contrast. *Popa v. Microsoft Corp*. involved session-replay analytics on a public pet-supply website. 153 F.4th 784 (9th Cir. 2025). The plaintiff there "identifie[d] no embarrassing, invasive, or otherwise private information collected," and the panel held the monitoring "seems most similar to a store clerk's observing shoppers." *Id.* at 791. "At most, Popa allege[d] that Clarity gathered her pet-store preferences and her street name." *Id.* Here by contrast, the "store clerk[] observing shoppers" is a stranger in the living room with a recorder, and Plaintiffs' "pet-store preferences" are instead what they and their families watch and listen to through their televisions. *Popa* directs courts to "the specific underlying harm experienced by the plaintiff," compared "in detail, to a specific common-law tort." *Id.* The "specific common-law tort" implicated here is clear. *See TransUnion*, 594 U.S. 425.

Amazon's remaining authorities describe a different world—the world of web browsers. Every one of them concerns a website or a pixel:

- *Lugo v. Amazon.com, Inc.* involved state video-privacy retention statutes, N.Y. Gen. Bus. Law § 673(5) and Minn. Stat. § 325I.02(6), and held that retaining video history the plaintiffs had voluntarily supplied, with no unlawful acquisition and no third-party disclosure, was "a bare procedural violation." No. 2:22-cv-01230-TL, 2023 WL 6241200, at *3-4 (W.D. Wash. Sept. 26, 2023) (Lin, J.). Amazon did not simply acquire video history "plaintiffs had voluntarily supplied." It recorded, analyzed, and commoditized Plaintiffs' entire TV-watching history without Plaintiffs' knowledge or consent. Compl. ¶¶ 29–72.
- *In re USA Today Co. Internet Tracking Litigation and Diaz v. Paramount Skydance Corp.* involved web trackers and pixels transmitting IP addresses, device fingerprints, cookie

identifiers, and mouse movements. 2026 WL 932655, at *2-3 (N.D. Cal. Apr. 6, 2026); 2026 WL 1090958, at *1-2, *4 (C.D. Cal. Apr. 20, 2026). Neither involved a device recording and identifying consumers' television watching history.

- *Hughes v. Vivint, Inc.* faulted a complaint that "d[id] not sufficiently explain what information of Plaintiff's was captured, only what information could be captured." 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024). *Hughes* is inapposite because here Plaintiffs' Complaint alleges what was captured as to each named Plaintiff. Compl. ¶¶ 19, 23.
- *Mendoza v. Microsoft Inc.* dismissed where plaintiffs did not allege "even that Plaintiffs' own information was disclosed." No. 14-CV-0316MJP, 2014 WL 4540213, at *1-3 (W.D. Wash. Sept. 11, 2014). Here, once again, Plaintiffs' Complaint alleges exactly that. Compl. ¶¶ 19, 23.

The level of privacy expected browsing internet websites is still a relatively new question being hotly litigated. Consumers have watched television with an expectation of privacy in their own homes for nearly a century. The world of the browser is simply not analogous to the sort of continuous, in-home audiovisual capture at issue here.

Indeed, the Ninth Circuit has found concrete injury where surveillance leaves the browser and enters consumers' real lives. *Jones v. Ford Motor Co.* held that allegations of an automobile infotainment system downloading and permanently storing private text messages and call logs "plausibly articulate[d] an Article III injury because they claim violation of a substantive privacy right." 85 F.4th 570, 574 (9th Cir. 2023). Nor is surveillance in the browser categorically immune from scrutiny. *In re Facebook, Inc. Internet Tracking Litigation* found injury where tracking caused "harm or a material risk of harm to [users'] interest in controlling their personal information," crediting allegations that connecting browsing history with profile data yielded a "cradle-to-grave profile without users' consent." 956 F.3d 589, 598-99 (9th Cir. 2020). A television that surveils and reports

everything played on it back to Amazon's servers is far closer to a car that copies a phone or browser-embedded surveillance software than it is to a store clerk that sees you buy pet food inside a pet store.

Yet Amazon repeatedly demands that Plaintiffs identify a particular embarrassing title they watched. *Popa* imposes no such rule. Instead, *Popa* asks whether the plaintiff identified an intrusion resembling one that common law redressed, and it faulted the *Popa* plaintiff because pet-store browsing resembled nothing of the sort. 153 F.4th at 791. Amazon's embedded surveillance technology deployed in consumers' TV, in contrast, is the sort of intrusion that a reasonable person would find highly offensive. That is the question § 652B poses, and it is a jury's to answer.

## VI. *Eichenberger* remains binding, and *Popa* says so.

Amazon also asks this Court to hold that the Ninth Circuit in *Popa* overruled *Eichenberger*, arguing that *Eichenberger* "predates and is inconsistent with *TransUnion* and *Popa*." Def.'s Mot. at 5. This argument fails for three reasons. First, far from being "inconsistent" with *Eichenberger*, *Popa* **expressly** leaves *Eichenberger* as binding precedent, stating: "we need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today," because "those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." 153 F.4th at 794. In other words, it is binding law that the kinds of allegations at issue here "'present the precise harm and infringe the same privacy interests Congress sought to protect' by enacting the VPPA." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

Second, while Amazon invokes *TransUnion* as though it forecloses Plaintiffs' claims, it actually expressly and unequivocally supports them. The Supreme Court in *TransUnion* offered three examples of intangible harms that *are* concrete for Article III purposes: "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs pleaded two of these three harms here. Compl. ¶¶ 7, 53–79 (detailing the

unauthorized disclosure of Plaintiffs' private information); *id.* ¶¶ 117–123 (alleging intrusion upon seclusion). The comparison *Popa* demands, measuring the plaintiff's harm "in detail, to a specific common-law tort," 153 F.4th at 791, has already been made by the Supreme Court. Nor must the fit be exact: "*Spokeo* does not require an exact duplicate in American history and tradition." *TransUnion*, 594 U.S. at 424.

Third, while *Eichenberger* does indeed predate *TransUnion*, the Ninth Circuit opinion in *Jones v. Ford Motor Co.* does not. *Jones* does, on the other hand, predate *Popa*, and thus the *Popa* opinion distinguished itself from *Jones* by stating that *Jones* had addressed the factors required by *TransUnion*. *Popa*, 153 F.4th at 793. Plaintiffs' claims here, like the claims in *Jones*, have the explicit blessing of *TransUnion*. *Compare TransUnion*, 594 U.S. at 425 (naming "disclosure of private information, and intrusion upon seclusion" as examples of concrete injuries under Article III) *with* Compl ¶¶ 7, 53–79, 117–123.

Plaintiffs more than adequately alleged "the specific circumstances of the plaintiffs' injuries" and "the *specific* plaintiffs alleged a violation of their 'substantive privacy right[s].'" *Popa*, 153 F.4th at 793 (citing *Jones*, 85 F.4th at 574); Compl. ¶¶ 19, 23 (alleging that each Plaintiff's captured information was disclosed); Compl. ¶ 70 (alleging that Amazon supplies advertisers data linkable to a consumer's identity); Compl. ¶ 115 (identifying advertising partners as the recipients). The resulting loss of control over disclosure of what Plaintiffs watched is the interest *Eichenberger* recognized and bears a close relationship to the disclosure harms the common law has always redressed. 876 F.3d at 983-84; *TransUnion*, 594 U.S. at 425, 432-33.

## VII. PLAINTIFFS' CLAIMS SHOULD ALL SURVIVE UNDER RULE 12(b)(6).

Plaintiffs State a Viable Claim Under the VPPA

The VPPA forbids a video tape service provider from knowingly disclosing to any person personally identifiable information concerning a consumer unless 18 U.S.C. § 2710(b)(2) authorizes it. 18 U.S.C. § 2710(b)(1); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Amazon disputes two elements. Neither argument has merit.

### **VIII.** *The Complaint does not merely allege internal analytics.*

Amazon downplays the Complaint as only alleging that Defendant used ACR data "for its own purposes." Def.'s Mot. at 10. It is worth spelling out those "purposes" here: monitoring what consumers watch on their televisions, analyzing the contents, and bundling consumer and content together as a dossier Amazon uses to tout unprecedented ad targeting capabilities of consumers to its true customers—the businesses paying for the consumers' eyeballs. Compl. ¶¶ 19, 23, 52, 70, 115. Specifically, Plaintiffs allege that Defendants disclosed Plaintiffs' personally identifiable information "to advertising partners through the Amazon advertising platform," *id.* ¶ 115, that each Plaintiff's captured information was disclosed, *id.* ¶¶ 19, 23, that Amazon correlates ACR output with data drawn from its other services and "then provides that data to advertisers in a manner allowing it to be linked to the consumer's identity," *id.* ¶ 70, and that Amazon "feeds ACR-derived data into its massive advertising platform, which makes this data available to advertisers," *id.* ¶ 52. Thus, Defendant's "own purposes" include allowing third-party advertisers to use that data for *their* purposes. Compl. ¶ 52.

The relevant disclosure here is the viewing-derived fact communicated through the match: that an identifiable consumer or household satisfies the advertiser's viewing-based criterion. Compl. ¶ 52. Selling unprecedentedly intimate access to consumers based on a dossier of their viewing habits is a quintessential "disclosure" under the VPPA. *See* 18 U.S.C. § 2710(b)(2)(D)(i)–(ii) (creating a narrow exception for disclosure in narrow cases for direct-to-consumer marketing based on the video subject matter only if the consumer receives a clear opportunity to prohibit the disclosure); *see also Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 637–45 (N.D. Ill. 2024) (collection of viewing-history information,

matching data to existing customers, and individual-level advertising plausibly supported an inference that Tubi disclosed the data to advertisers).

Amazon's cited cases involve complaints that alleged nothing of the kind. In *Rodriguez v. Sony Computer Entertainment America LLC*, the plaintiff failed "to state that a disclosure has affirmatively taken place, identify with particularity the person(s) or entity to whom such disclosure was made, or state that any such disclosure falls outside the scope of disclosures permitted under the VPPA.", 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012). In *Mendoza*, the plaintiffs did not allege that their own information had been disclosed at all. 2014 WL 4540213, at *1-3. Plaintiffs here, in contrast, plead that Amazon did disclose data, to identified recipients (advertising partners) through an identified channel. Compl. ¶¶ 19, 23, 70, 115.

### **IX.** *The ACR dossier is personally identifiable information.*

PII includes any information identifying a person as having requested or obtained specific video materials. 18 U.S.C. § 2710(a)(3). *Eichenberger* asks whether the disclosure "would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" 876 F.3d at 985 (internal citation omitted). The *Eichenberger* plaintiff failed that test on a specific record: a Roku serial number and viewing titles, where, as the plaintiff conceded, "that information cannot identify an individual unless it is combined with other data in Adobe's possession—data that ESPN never disclosed and apparently never even possessed." *Id.* at 986.

Here, in contrast, it is indisputable that the data collected from consumers is PII. Plaintiffs' and other consumers' personal identification and the ability to *target* consumers based on *unique* viewing history <u>is the product Amazon sells</u>. Compl. ¶¶ 7, 34, 52, 73–79. If Amazon's dossiers weren't personally identifiable, Defendant would not have a product to offer advertisers. Amazon did not merely hand over an anonymous serial number that an unknown third party might someday decode, like in *Eichenberger*. Amazon performed the linkage itself, connecting ACR data to specific

consumers in voluminous dossiers, then supplying advertisers with data "in a manner allowing it to be linked to the consumer's identity." Compl. ¶¶ 7, 47–48, 70. Amazon's competitive pitch is that it alone can match television viewing to specific consumers and allow advertisers to act on it. Id. ¶ 36. **Consumer identification is the product**.

Moreover, Congress contemplated that a potential use for the PII encompassed by the VPPA would be to "market[] goods and services directly to the consumer," but expressly barred this unless "the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D). Congress explained why such records deserve protection: they are "a window into our loves, likes and dislikes," and the private reflection they capture "should be protected from the disruptive intrusion of a roving eye." S. Rep. No. 100-599, at p. 7 (1988) (statement of Rep. Al McCandless); Compl. ¶ 2. Amazon's ACR Tool is that roving eye.

### **X.** *Amazon's boilerplate is not VPPA consent.*

Amazon does not argue that it obtained consent satisfying § 2710(b)(2)(B), nor could it. That provision demands informed, written consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"; given at the time the disclosure is sought or for a defined period no longer than two years; and accompanied by a clear, conspicuous opportunity to withdraw. 18 U.S.C. § 2710(b)(2)(B)(i)-(iii). Amazon points to a general Conditions of Use hyperlink under a "Continue" button and a Privacy Notice reachable from it. Def.'s Mot. at 8–9 n.5; Compl. ¶ 58. A blanket assent to terms of service is the opposite of a form "distinct and separate from" other legal obligations. Congress wrote § 2710(b)(2)(B) to prohibit precisely this.

## **XI.** PLAINTIFFS STATE A VIABLE CLAIM FOR INTRUSION UPON SECLUSION.

Amazon's argument against Plaintiffs' intrusion upon seclusion claim recycles its failed standing arguments: Plaintiffs supposedly identify no "highly offensive" collection, and they consented anyway. Def.'s Mot. 11-12. The first fails for the reasons given in Section III.A at 4–7. Plaintiffs allege that a company monitoring everything they watch on their television in their own homes, Compl. ¶¶ 6, 43–44, building a dossier of its findings, Compl. ¶¶ 6–7, 45–48, and charging advertisers to target consumers based on the dossier, Compl. ¶¶ 52, 73–79, would be highly offensive to a reasonable person. *See Armijo v. Yakima HMA, LLC*, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012) (denying dismissal of intrusion upon seclusion claim under Washington law where the defendant monitored contents of the plaintiff's diary); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1231–33 (C.D. Cal. 2017) (denying dismissal of intrusion claims where smart-TV software allegedly collected an "exceptionally vast array" of consumers' viewing histories); *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *10 (W.D. Wash. Dec. 19, 2023) (finding plaintiff's 'highly offensive' bar met where "the data at issue is more private than a person's mailing address and this kind of intrusion is not routine commercial behavior.").

Amazon's consent argument likewise fails because the scope of consent extends only to "the particular conduct, or to substantially the same conduct" consented to, and turns on "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Calhoun v. Google*, LLC, 113 F.4th 1141, 1147–50 (9th Cir. 2024) (internal citations and quotations omitted) (general privacy policy did not establish consent where a product-specific notice could reasonably communicate a narrower practice).

Amazon's disclosures do not clearly put consumers on notice as to its ACR technology. The setup screen says Amazon "processes and retains audio, interactions, viewing, and other data in the cloud to provide and improve our services." Compl. ¶ 58. The Privacy Notice lists "content downloads,

streams, and playback details, including duration and number of simultaneous streams and downloads." Def.'s Mot. at 8. The device settings offer "Device Usage Data," defined as data about "how consumers navigate the home screen, select device settings, and open and close applications," and "Collect App and Over-the-Air Usage Data," defined as "the frequency and duration of your use of third-party apps." Compl. ¶¶ 61, 65-66. A user who reads all of it learns that Amazon knows she watched a Netflix show and several YouTube videos over the course of two hours. She does not learn that Amazon captured those two hours, analyzed it to determine and make a record of everything she watched, and used that information to give advertisers targeted access to her. Compl. ¶¶ 6–7, 34, 43–48, 52, 73–79.

Furthermore, Amazon's own Brief defeats its argument. It tells the Court that the Complaint's account of the consent flow "omit[s] important disclosures relating to ACR." Def.'s Mot. at 2 nn.1, 3. <u>But if there are "important disclosures relating to ACR," they are not in Amazon's exhibits.</u> Thus, Amazon has identified a factual dispute about the terms on which its consent defense rests, a factual dispute relying on evidence Amazon cryptically alludes to but cannot identify. This argument must be rejected at this stage.

Amazon's authorities are inapposite because they all involved disclosures that were just that: disclosures. *Gray v. Amazon.com, Inc.* involved Alexa terms expressly permitting collection of voice inputs, and plaintiffs who did not dispute being bound. 653 F. Supp. 3d 847, 859-60 (W.D. Wash. Jan. 27, 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024). *Hammerling* turned on a policy that "unambiguously disclose[d] Google's collection of user activity data in third-party apps." *Hammerling v. Google, LLC*, No. 22-CV-17024, 2024 WL 937247, at *2–3 (9th Cir. Mar. 5, 2024). *Lloyd* involved a policy giving "clear notice that third party partners may share data with Facebook." *Lloyd v. Facebook, Inc.*, No. 23-15318, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). And *Budsberg*

*v. Trause* involved a plaintiff who signed an access authorization, unlocked her door, and turned the computer on herself. No. 46653-8-II, 2015 WL 7259958, at *6 (Wash. Ct. App. Nov. 17, 2015).

Defendant's other cited case, *M.D. v. Google LLC*, cuts in Plaintiffs' favor. The *M.D.* court held that the prior "Privacy Policy does not establish consent, however, because the Privacy Policy did not 'explicitly notify' Plaintiffs **of the practice at issue**." 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025). The updated privacy policy *did* establish consent, and in doing so illustrates the threshold for consent that Amazon failed to reach here. Specifically, in *M.D.*, the third party's updated policy "disclosed that BlueChew collects 'Personal Information consisting of health information,' and that it shares such 'Personal Information' 'with third parties,' including for advertising and data analysis." *M.D.*, 2025 WL 2710095, at *5.

Finally, Amazon emphasizes that ACR "can be disabled, and Manypenny alleges that she already turned it off." Def.'s Mot. at 17 (citing Compl. ¶¶ 18, 67). But "[t]he fact that users could have taken additional measures to prevent [software] from tracking their browsing [] is not relevant at the pleading stage. This is a fact-based defense to be developed and asserted at a later stage of the litigation." *In re Facebook*, 956 F.3d at 605-06. In any event, she only turned it off after she discovered it—by inspection, having never been told. Compl. ¶ 18. Disabling it required finding and toggling three separate settings inside a menu reached through Settings, then Preferences, then Privacy Settings. *Id.* ¶¶ 63, 67. Nonetheless, Amazon's software updates may still switch them back on. *Id.* ¶ 72. Because of the opaque dark patterns Amazon uses to obfuscate its use of ACR technology, Compl. ¶ 68, Plaintiff would have to continually conduct internet research to determine whether the surveillance software on her television had been turned back on to have any assurance that her television was no longer surveilling her usage, *id.* ¶¶ 131, 144.

## XII. PLAINTIFFS HAVE ADEQUATELY PLEADED VIABLE CONSUMER PROTECTION CLAIMS.

*If Amazon's Choice-of-Law Clause Bars Out-of-State Consumer Protection Claims, It Permits a Nationwide Claim Under the WCPA.*

Amazon's choice-of-law argument rests on a clause it characterizes as categorical: "By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon." Def.'s Mot. at 12 (quoting Ex. A at 4). On Amazon's reading, the clause reaches statutory consumer-protection claims arising from Fire TV use, and it reaches them because the user assented to the Conditions of Use at device setup. Def.'s Mot. at 12-13; *see* Compl. ¶¶ 14, 58.

We agree. On Amazon's own account of the record, assent to the Conditions of Use is not a fact peculiar to these two Plaintiffs, but a classwide feature of buying this product. If "any dispute of any sort" between Amazon and a Fire TV user is governed by Washington law, and this choice-of-law governs consumer protection statutory remedies, the necessary implication is that one State's law (the Washington Consumer Protection Act) governs the consumer-protection claims of both nationwide classes.

The WCPA is already among the statutes pleaded: Count III invokes Wash. Rev. Code § 19.86.010 *et seq*. on behalf of the Consumer Fraud Multi-State Subclass. Compl. ¶¶ 94 n.22, 124-31. Plaintiffs request an order (1) holding the WCPA applies to each Plaintiffs' consumer protection claims, (2) dismissing Counts IV through VI without prejudice under the parties' chosen law, (3) narrowing Count III to the WCPA, and (4) granting Plaintiffs leave to amend to assert the WCPA claim on behalf of the nationwide class. *See, e.g., Crowell v. Audible Inc.*, 806 F. Supp. 3d 1216, 1230 (W.D. Wash. 2025) (enforcing the choice-of-law provision, dismissing without prejudice, and granting leave to replead under Washington law).

Washington's Supreme Court has held that the WCPA "create[s] a cause of action for a plaintiff residing outside Washington to sue a Washington corporate defendant for allegedly deceptive acts." *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 797–803 (2015). Due process is satisfied where the forum State has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair," *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985); *see Thornell*, Wn.2d at 797–803, a standard met three times over by Amazon's Washington headquarters, the design and operation of the challenged system from Washington, and every class member's contractual selection of Washington law.

**XIII.** *Count III identifies the statutes it invokes.*

If, however, the Court does not find that the Washington choice-of-law clause bars claims under other state consumer protection statutes, Plaintiffs' claims under the ICFA, New York G.B.L., and on behalf of the multi-state class are all adequately pleaded. First, Amazon says Count III asserts "unspecified" state consumer fraud acts. Def.'s Mot. at 12. On the contrary, Plaintiffs' Complaint names ten states and ten corresponding statutes by name in its subclass definition: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington, each with a statutory citation. Compl. ¶ 94 n.22. Plaintiffs' Count III is brought on behalf of that subclass and incorporates the cited statutes by reference. *Id.* ¶ 124.

Defendant cites *Frame-Wilson v. Amazon.com, Inc.* to argue that "[a] cursory listing of the other states' statutes is insufficient to satisfy Twombly and Iqbal's pleading requirements," 591 F. Supp. 3d 975, 994 (W.D. Wash. 2022) (Jones, J.) (*quoting Adams v. Target Corp.*, 2014 WL 12558290, at *6 (C.D. Cal. Mar. 3, 2014)). But Plaintiffs did not merely allege a "cursory listing of other states' statutes." Plaintiffs characterized their list as "those States with similar consumer fraud laws under the facts of this case," and pleaded a violation of the state consumer fraud acts of those

states in Count III and then described how those facts amount to violations of the ten similar consumer fraud laws. Compl. ¶¶ 124–131.

### **XIV.** *Manypenny pleads an ICFA claim with particularity.*

Amazon's Rule 9(b) objection is that Manypenny "does not specify what representation or omission was false or misleading or what made it false or misleading." Def.'s Mot. at 13. This is simply wrong. The Complaint says that Amazon implemented a "surveillance-by-default design," Compl. ¶ 57, which does not "give notice of the scope of surveillance by Amazon's ACR software nor does it give notice that any of that surveillance will be shared with third parties and/or used to target consumers with advertising," *id.* ¶ 58, that "Amazon's disclosures regarding its data collection practices are opaque and misleading," *id.* ¶ 64, and that this is misleading because "the ACR Tool continuously captures audio and visual data from the Fire TV screen, correlates that data with user-specific identifiers, and feeds it into Amazon's advertising platform to allow Amazon and other companies to target them," *id.* ¶ 64. Plaintiffs also make clear that "[t]he juxtaposition between automatic enrollment by default and the multi-step process required to opt-out is a quintessential example of a 'dark pattern,' tricking consumers into sharing more private information than they would have if Defendants had been transparent about their data collection practices and sought to obtain consent as legally required." *Id.* ¶ 68. Plaintiffs' Complaint is filled with other details alleging which of Amazon's practices were deceptive and why. *See generally* Compl. ¶¶ 57–72.

That is not the pleading rejected in *Camasta v. Jos. A. Bank Clothiers, Inc.*, where the plaintiff offered nothing "more than [an] assertion that merchandise was offered at sale prices" and pleaded the practice "solely on information and belief." 761 F.3d 732, 736-37 (7th Cir. 2014). Nor is it *Kearns v. Ford Motor Co.*, where the plaintiff never specified "what the television advertisements or other sales material specifically stated." 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Furthermore, Amazon's demand for the "when and where"

of a statement sits awkwardly with a claim built on omissions: the gravamen is what Amazon never said.

On causation, Amazon invokes the rule that an ICFA plaintiff must be deceived directly or indirectly. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554-61, 922 N.E.2d 309 (2009); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155, 776 N.E.2d 151 (2002). Manypenny satisfies this rule. She bought her Fire TV through Amazon's own website, Compl. ¶ 17, on pages Amazon wrote and controlled, where the Complaint alleges the omissions appeared (or did not appear), *id.* ¶ 138. *Oliveira* was primarily a misrepresentations case and dismissed the claims because the plaintiff never claimed to have seen the representations alleged. *Oliveira*, 201 Ill. 2d at 155. *De Bouse* did involve omissions, and it confirms that indirect deception suffices where "the statements by the defendant [are] made with the intention that it reach the plaintiff and influence his action." 235 Ill. 2d at 555. Here, Amazon designed, marketed, and sold televisions, and a television operating system, that doubled as surveillance devices and concealed that significant fact from consumers. Compl. ¶¶ 6–7, 43–48, 57–71.

Amazon's authorities for its argument that Plaintiff did not allege actual damages are also unavailing. *Siegal v. GEICO Casualty Co.* sustained the ICFA counts, holding that because the plaintiff "properly alleges actual pecuniary damage," she "need not allege that but for GEICO's statement she would have shopped around for a better price." 523 F. Supp. 3d 1032, 1043-44 (N.D. Ill. 2021). Plaintiff's "actual pecuniary damage" is clear: the Product she received (a TV that surveils) is worth less than the Product she bargained for (a TV that does not watch you back). Compl. ¶ 143. Defendant's other cases, *Mitchell v. Credit Solutions*, LLC, 2023 WL 12193813 (N.D. Ill. Sept. 14, 2023), and *Patterson v. SLI, LLC*, 2026 WL 1786230 (N.D. Ill. June 22, 2026), concern plaintiffs who alleged no defect in what they bought. Manypenny by contrast alleges the deficiency in her Product with particularity: the product surveils her inside her home.

### **XV.** *Enser adequately pleads a viable GBL claim.*

Amazon's argument that Plaintiff Enser's GBL claims fail because he could not point to any "materially misleading conduct," Def.'s Mot. at 14, is the same recycled disclosure argument Plaintiffs already addressed. It fails here for the same reasons stated above. *See* Section III.B.1.a. at 10–11, III.B.2 at 13–14. Defendant's own parenthetical underscores why its argument fails. Vague, opaque language that some "personal data" may be used "for marketing and product improvement purposes," Compl. ¶ 65—when in reality **total surveillance of everything consumers watch on their televisions** is used to allow advertisers to intimately target them, Compl. ¶¶ 70–71—is a far cry from the "full[] disclos[ure]" required by the Second Circuit in *Fink*. Def.'s Mot. at 14 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

Every case Amazon cites for "full disclosure" involved a disclosure that, unlike Amazon's disclosure here, addressed the very thing alleged to be concealed. In *Chufen Chen v. Dunkin' Brands, Inc.*, the challenged advertisements "conclude[d] with [] zoomed-in images that clearly depict the steak [] as a patty"—the ad showed what the plaintiffs said was hidden. 954 F.3d 492, 500-02 (2d Cir. 2020). In *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, the New York Court of Appeals rejected the argument that the conduct was not consumer-oriented and affirmed only because an express disclaimer negated the precise representation at issue. 37 N.Y.3d 169, 176-78, 171 N.E.3d 1192 (2021). In *Owens v. Aspen Funding LLC*, the mortgage documents "accurately reflect[ed] the terms," and the complaint was only that they were hard to read. 2011 WL 4024820, at *12 (W.D.N.Y. Sept. 9, 2011). *Broder v. MBNA Corp.* likewise concerned a fully disclosed practice. 722 N.Y.S.2d 524, 526 (1st Dep't 2001). Amazon identifies no disclosure addressing continuous audiovisual capture because there is none. Indeed, its own footnote tells the Court that "important disclosures relating to ACR" lie outside the signup flow in the Complaint, the Conditions of Use, and Privacy Notice. Def.'s Mot. 2 n.3.

Nor does *Martin v. Meredith Corp.* fill the gap. *Martin* is a Facebook-Pixel case about People.com, dismissed because the transmitted data did not identify "specific video materials" under the VPPA. 657 F. Supp. 3d 277, 284-87 (S.D.N.Y. 2023). It is inapposite to this case, where Plaintiffs expressly, clearly, and repeatedly allege the "specific" video materials disclosed were everything they watched on their televisions. Compl. ¶¶ 6, 32, 42–44, 50, 64–66. Thus, Defendant's cited cases do not undermine Plaintiffs' claims. Optimistically perhaps, they provide a useful guide for Amazon's legal team to advise the company on changes to the terms of use to *actually disclose* the use of ACR and comply with the law going forward.

Amazon's second argument here is that Enser "fails to allege that he ever saw or reviewed any of the purportedly misleading statements." Def.'s Mot. at 14 (citing *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (2d Dep't 2004); *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022)). The plaintiff in *Gale* "nowhere state[d] in his complaint that he saw any of these statements." 9 A.D.3d at 447. Here, Plaintiff Enser bought a co-branded Toshiba Fire TV running Amazon's operating system and marketed on the strength of it. Compl. ¶¶ 22, 37–41. The Complaint alleges that the challenged representations and omissions appeared on "the packaging of the Products, the Defendants' website, and the online pages for the Products," *id.* ¶ 138, and that Defendants "advertised the Products as normal televisions" while failing "to reveal facts material in light of such representations," id. ¶ 160. Packaging reaches a retail purchaser at the point of sale by definition. Whether Plaintiff Enser saw it, and what it said, are questions for summary judgment. Nor is Plaintiff required to point to where he saw Amazon's **omissions**—a plainly impossible task.

Third, on injury, Plaintiff Enser alleges he would not have purchased or would have paid less, and that he received a surveillance device instead of the television he bargained for. Compl. ¶¶ 155, 164. *Naimi v. Starbucks Corp.*—Amazon's own authority—is instructive. Applying New York law,

the Ninth Circuit held that a would-not-have-purchased allegation "standing alone, is not a cognizable injury" and that "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury." 798 F. App'x 67, 69-70 (9th Cir. 2019). But price premium theories of injury are well-established under New York law. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). The issue in *Naimi* was simply that the plaintiff's price premium allegations were completely conclusory. Plaintiff here, by contrast, offers far more than the "bare recitation of the word 'premium'" to support his injury. His pleading is based on the claim that a TV that spies on you is worth less than a TV that does not, supported by pages of allegations detailing Amazon's surveillance through the Product and the company's lack of disclosure of this surveillance. Compl. ¶¶ 6–7, 43–48, 57–71. The *Naimi* plaintiff's conclusory allegations were a far cry from Plaintiff Enser's detailed allegations here.

Finally, Plaintiff Enser's § 350 claim rises with § 349. *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017). *Cohen v. Casper Sleep Inc.* observed only that the plaintiff there "cite[d] no case law demonstrating that a privacy policy can constitute advertising, and this Court has found none." 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018). Enser's § 350 theory rests on how Amazon marketed the televisions—as ordinary televisions omitting the material fact that they surveil consumers in their homes—not on a privacy policy itself. Compl. ¶¶ 160–61.

## XVI. PLAINTIFFS' IMPLIED CONTRACT CLAIM SHOULD SURVIVE DISMISSAL

Washington recognizes an implied-in-fact contract on offer, acceptance in the terms of the offer, communication to the offeror, mutual intention to contract, and a meeting of the minds—all of which may be "arrived at from the[] acts and conduct" of the parties. *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wn.2d 363, 368 (1956) (internal citations omitted). Terms must be objectively

manifested and sufficiently definite. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177, 94 P.3d 945 (2004).[1]

Amazon's threshold argument is that an express contract forecloses an implied one. Def.'s Mot. 15. That rule applies where an express agreement covers the same subject. *Woodard v. Boeing Emps. Credit Union*, No. 23-CV-00033-JNW, 2023 WL 4847126, at *5 (W.D. Wash. July 28, 2023); *Krefting v. Kaye-Smith Enters.*, Inc., No. 2:23-cv-00220-JNW, 2023 WL 4846850, at *6 (W.D. Wash. July 28, 2023). Both were companion orders from the same judge on the same day, and in each the operative agreement and its privacy terms were identified and undisputed. Here, whether Amazon's Conditions cover ACR capture is a contested question, and Amazon's own footnote places "important disclosures relating to ACR" outside of those documents at issue. Def.'s Mot. 2 n.3. Rule 8(d) permits pleading in the alternative until that question is resolved. Fed. R. Civ. P. 8(d)(2)-(3).

Defendant next argues that Plaintiffs fail to allege "the existence of any valid implied contract regarding ACR or their data that is supported by mutual assent and consideration." Def.'s Mot. at 16. But Washington law permits mutual assent to be inferred from the parties' conduct and surrounding circumstances, *Hoglund v. Meeks*, 139 Wn. App. 854, 870–71, 170 P.3d 37 (2007), and ordinarily treats assent as a factual question, *Keystone*, 152 Wn.2d at 178 n.10 (2004); acceptance may likewise be manifested by using the offered product or service, *Discover Bank v. Ray*, 139 Wn. App. 723, 727, 162 P.3d 1131 (2007). Plaintiffs plead precisely this kind of exchange: Amazon developed, licensed, controlled, and/or sold the Fire OS installed on both of their televisions, including its ACR functionality, privacy settings, disclosures, and advertising infrastructure, and held Fire TVs out as entertainment devices. Plaintiffs purchased the Fire TVs and used the Fire TV platform, which Amazon exploited to surveil and monetize their viewing habits. Compl. ¶¶ 17, 22, 30, 37–41, 64–79,

[1] Amazon cites *Keystone* as "194 P.3d 945 (Wash. 2004)." Def.'s Mot. at 16. The correct parallel citation is 94 P.3d 945.

168–72. Nor does Enser's purchase from Best Buy negate his direct course of dealing with Defendant. Amazon furnished and controlled the operating system and Amazon services he used and deliberately extracted and monetized his watching habits. Indeed, *Nienaber* expressly distinguished cases implicating confidential information and recognized that an implied contract may arise when consumers are invited to provide information in exchange for goods or services. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1090–92 (W.D. Wash. 2024).

Finally, Defendant argues that "the diminution of the value of [Plaintiffs'] personal information" is not recoverable in contract. Def.'s Mot. at 16 (citing *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1066 (C.D. Cal. 2024)). But Plaintiffs were not only injured in this way. Plaintiffs were also injured because the Products they bought were, unbeknownst to them, surveillance devices. Compl. ¶¶ 7, 34, 52, 57–71, 73–79. Defendant's sole response to this is to say that Plaintiffs "fail to explain how the availability of ACR technology on their televisions diminishes their value." Def.'s Mot. at 17. This argument rings hollow. The economic "worth" of a product is what consumers are willing to pay for it. *See Money Mailer, LLC v. Brewer*, 194 Wn.2d 111, 120 (2019) (defining fair market value as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction"). In the context of a price premium theory of injury, economic worth is measured objectively: the injury is "the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015); *see Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019). Plaintiffs alleged that they paid more for the Products than they would have if they had known they were surveillance devices. Compl. ¶¶ 136, 143. If Defendant truly is skeptical that reasonable consumers would pay less for a television that spies on them (a dubious position), this skepticism is a question of fact, and is a further indication that Defendant cannot prevail on the issue on a motion to dismiss.

This is not undercut by the fact that consumers who fortuitously learn of Amazon's use of ACR technology can turn it off. At any time, with any software update, Amazon may elect to turn the "feature" back on. Compl. ¶ 72. And the dark patterns Amazon uses to obscure its practices put consumers at a distinct disadvantage in a continual adversarial struggle with their own televisions. *Id.* ¶ 68. In order to continually ensure they are not being spied on in their own homes, Plaintiffs and other purchasers of Fire TVs would need to periodically conduct internet research to figure out whether the surveillance software on their TVs had reactivated against their wishes. *Id.* ¶ 131. Consumers would not be saddled with this burden, however, if Amazon simply followed the law. See *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (a consumer "does not and should not be required to take the risk that what is heard and seen [in their home] will be transmitted by [] recording.").

## XVII. COUNT VIII PLEADS UNJUST ENRICHMENT IN THE ALTERNATIVE.

Amazon's argument against Plaintiffs' claims for unjust enrichment is that Washington requires a tangible economic loss to the plaintiff and, according to Defendant, Plaintiffs suffered no such tangible economic loss. *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1299 (W.D. Wash. 2021) (quoting *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012)); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *11 (W.D. Wash. Mar. 4, 2025). In most of Amazon's cited cases, the plaintiff made no payment for a product at all—no purchase, no fee, nothing but data. Plaintiff Manypenny **paid Amazon** for the television that ran the company's software. Compl. ¶ 17. Plaintiff Enser paid a retailer for the same co-branded product built on Amazon's operating system and monetized both through wholesale and through Amazon's advertising platform. *Id.* ¶¶ 22, 40-41, 52. Plaintiffs' tangible economic loss is the portion of their Product's purchase price attributable to a product worth less because it was actually a sophisticated surveillance device monitoring purchasers in their own homes. *Id.* ¶¶ 143, 155. In *Street v.*

*Amazon.com Servs. LLC*, the plaintiffs did not argue that their Echo Dot products surveilled them or in any other way diminished the value of the products. No. C21-0912-JLR, 2022 WL 3683811, at *4–5 (W.D. Wash. Aug. 25, 2022). Instead, the Echo Dot products merely formed a mesh network to allow other devices to connect to the internet. *Id.* at *1. Plaintiffs did not even attempt to allege this lowered the value of their Echo Dots, and the Court found no injury on that ground. *Id.* ("The only other putative injury they claim to have suffered relates to the 'significant time' they spent learning about how to disable Sidewalk on their Echo

").

Nor is Defendant's duplicative argument availing. Plaintiffs may permissibly plead unjust enrichment *in the alternative* to other theories of liability at this stage of litigation. Fed. R. Civ. P. 8(d)(2)-(3); *see also Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. C22-0825-JLR, 2022 WL 4534422, at *5–6 (W.D. Wash. Sept. 28, 2022) (denying dismissal of an alternatively pleaded unjust-enrichment claim because contradictory contract allegations were permissible and no valid, enforceable contract had yet been shown to govern the claim's subject matter). For this same reason, Plaintiffs' unjust enrichment claim should not be dismissed as derivative at the pleading stage either. *Id.*; *see also* Section III.B.4 at 23 (whether Amazon's Conditions govern ACR capture is disputed).

## XVIII. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss. If the Court grants any part of Defendant's Motion, Plaintiffs request leave to amend, which should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2).

DATED: August 10, 2026

Respectfully submitted,

/s/ Roger M. Townsend
Roger M. Townsend
**TOWNSEND LEGAL**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110
Telephone: (206) 761-2649
Email: roger@townsendlegal.com

Nick Suciu (*Pro Hac Vice*)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (616) 678-2180
Email: nsuciu@brysonpllc.com

Trenton R. Kashima (*Pro Hac Vice*)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Telephone: (212) 946-9389
Email: tkashima@brysonpllc.com

*Attorneys for Plaintiffs*