THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY MANYPENNY and KENNETH ENSER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AMAZON DIGITAL SERVICES LLC, and AMAZON TECHNOLOGIES, INC.,

Defendants.

Civil Action No. 2:26-cv-01534-TL

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

NOTE ON MOTION CALENDAR: AUGUST 25, 2026

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**


I. INTRODUCTION ....................................................1

II. ARGUMENT ....................................................1

A. The Opposition Confirms Plaintiffs Lack Standing....................................................1

1. Plaintiffs Do Not Allege a Highly Offensive Intrusion. ....................................................2

2. The Opposition Confirms Plaintiffs Did Not Have an Expectation of Privacy in Data Purportedly Collected. ....................................................4

B. Plaintiffs Fail to State Any Claim. ....................................................5

1. The VPPA Claim Must Be Dismissed. ....................................................5

2. The Intrusion Upon Seclusion Claim Must Be Dismissed. ....................................................6

3. All Consumer Protection Claims Must Be Dismissed. ....................................................7

4. The Implied Contract Claim Must Be Dismissed. ....................................................10

5. The Unjust Enrichment Claim Must Be Dismissed. ....................................................11

III. CONCLUSION ....................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armijo v. Yakima HMA, LLC*,
2012 WL 2576624 (E.D. Wash. July 3, 2012)....6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7

*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 623 (N.D. Ill. 2024)....5, 6

*Covarrubias v. Am. Airlines, Inc.*,
2011 WL 13100749 (W.D. Wash. Apr. 21, 2011)....10

*De Bouse v. Bayer AG*,
235 Ill. 2d 544 (2009)....9

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026)....3

*Dietemann v. Time, Inc.*,
449 F.2d 245 (9th Cir. 1971)....2

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....6

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....3, 4, 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....4

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975 (W.D. Wash. 2022)....8

*Gale v. Int'l Bus. Machines Corp.*,
781 N.Y.S.2d 45 (N.Y. App. Div. 2004)....9

*Geraci v. Homestreet Bank*,
203 F. Supp. 2d 1211 (W.D. Wash. 2002)....11

*Gonzalez Merical v. The Joint Corp.*,
2026 WL 2225531 (E.D. Cal. Aug. 3, 2026)....3

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)....7

*Guajardo v. Skechers USA, Inc.*,
2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ....................8

*Gurrola v. Ford Motor Co.*,
774 F. Supp. 3d 959 (N.D. Ill. 2025) ....................9

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................6

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ....................4

*LaBella v. Apple Inc.*,
2025 WL 3014037 (N.D. Cal. Oct. 28, 2025) ....................7

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ....................9

*Morehouse v. Apple, Inc.*,
2025 WL 3525573 (N.D. Cal. Dec. 4, 2025) ....................10, 11

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ....................9, 10

*Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*,
2022 WL 4534422 (W.D. Wash. Sept. 28, 2022) ....................11

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
764 F. Supp. 3d 1026 (W.D. Wash. 2025) ....................7, 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................1, 2, 3, 4

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ....................9

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................4

*Schallert v. Laird Superfood, Inc.*,
2026 WL 1707585 (C.D. Cal. June 5, 2026) ....................3

*Vasquez v. Wash. Dep't of Veterans Affs.*,
2024 WL 4979847 (W.D. Wash. Dec. 4, 2024) ....................6

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................6

**Other Authorities**

Fed. R. Civ. P. 9 ....................7, 9

## I. INTRODUCTION

Plaintiffs' Opposition confirms what Amazon's Motion demonstrated: the Complaint fails to allege the concrete injury required for Article III standing and fails to state a plausible claim on every count. Unable to identify any embarrassing, invasive, or otherwise private information that Amazon collected or disclosed—as *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) requires—Plaintiffs attempt to recast ACR technology as "spying" on them in their own homes. But the Complaint pleads no facts supporting this mischaracterization; at most, it asserts that ACR captures what appears on a user's television screen, no differently than (as in *Popa*) a website capturing what appears on a visitor's computer screen. And Plaintiffs cannot escape their own admission that Amazon disclosed that it may collect data about the content they view. Having received that notice, Plaintiffs cannot claim a reasonable expectation of privacy in the information Amazon told them it might collect.

Plaintiffs' merits arguments are equally flawed. Implicitly conceding that the Complaint does not allege that Amazon disclosed any ACR data to a third party, as the VPPA requires, Plaintiffs pivot to a new theory, not pled in the Complaint, that Amazon compiles a "dossier" about consumers that Amazon uses to sell targeted advertising. But even were Plaintiffs to amend their Complaint to plead this theory, it would be futile: Amazon's purported use of a "dossier" to sell advertising is not a "disclosure" of Plaintiffs' viewing information. Plaintiffs' intrusion-upon-seclusion claim fails for the same reasons they lack standing. And their consumer protection claims and other common law claims cannot survive Plaintiffs' admissions that Washington law applies and that an express contract governs their relationship with Amazon, among other reasons. The Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The Opposition Confirms Plaintiffs Lack Standing.

The Opposition confirms that Plaintiffs have not pleaded a concrete injury sufficient for Article III standing. Plaintiffs do not even attempt to analogize their purported injuries to the tort of public disclosure of private facts, and focus only on the tort of intrusion upon seclusion. But Plaintiffs identify no factual allegations that they suffered any "highly offensive" intrusion—*i.e.*, collection of information that was "embarrassing, invasive, or otherwise private"—as required under *Popa*, 153 F.4th at 791. Contrary to

Plaintiffs' attempt to distinguish *Popa*, the Complaint's assertions that Amazon captures what appears on a user's Fire TV device are no different than allegations that a website captures what appears on a computer screen. And Plaintiffs have no substantive response to the fact that, by admitting they received disclosures that Amazon may collect data about their viewing activity, they effectively concede that they lacked a reasonable expectation of privacy. Each of these deficiencies independently requires dismissal.

**1. Plaintiffs Do Not Allege a Highly Offensive Intrusion.**

The Opposition's argument that the Complaint pleads an injury analogous to intrusion upon seclusion runs headlong into *Popa*. There, the plaintiff alleged that the defendant used technology that could "recreate website visitors' entire visit to" the defendant's website—in other words, capturing information about everywhere the user navigated and everything that the user chose to see. *Id.* at 786–87. The Ninth Circuit held those allegations were *not* analogous to intrusion upon seclusion because the plaintiff did not allege collection of "the type of private information that the law has historically protected"—*i.e.*, information that was "embarrassing, invasive, or otherwise private." *Id.* at 791.

The same deficiency is fatal here. Plaintiffs assert that Amazon uses technology that "surreptitiously intercepted and disclosed" their "Sensitive Information." But Plaintiffs do not identify any collected information that was "embarrassing, invasive, or otherwise private."

Unable to meet the standard in *Popa*, Plaintiffs principally rely on *Dietemann v. Time, Inc.*—a more than 50-year-old decision that does not even address standing. 449 F.2d 245 (9th Cir. 1971). There, the court affirmed a judgment against journalists who tricked the plaintiff into inviting them into his home under false pretenses for a medical examination, secretly photographed him using a hidden camera, surreptitiously recorded him through a radio hidden in a purse, and published pictures and an article portraying him as a "quack." *Id.* at 245–46. That case involved intentional physical intrusion, secret recording and transmission of a medical examination, and publication of an article about the plaintiff's medical practice—none of which is present here. And unlike Plaintiffs' Complaint, which alleges no facts about the information purportedly collected from Plaintiffs, *Dietemann* considered a trial record detailing the specific information about the plaintiff that was secretly recorded, transmitted, and published.

Plaintiffs' attempt to limit *Popa* to "a public pet-supply website" or to cases where the monitoring is "similar to a store clerk's observing shoppers" misreads its holding. Opp. at 10. Rather, *Popa* made clear that a highly offensive intrusion must involve "embarrassing, invasive, or otherwise private information," such as "sensitive medical or financial information." 153 F.4th at 791. Following *Popa*, courts have dismissed privacy claims where, as here, plaintiffs failed to plead the collection of specific, private information about them. For example, in *Diaz v. Paramount Skydance Corp.*, the court held that allegations that the defendant collected and disclosed information about videos watched did not plead standing because the plaintiffs did not allege the collection of "specific, sensitive information" or that the information was personally identifiable. 2026 WL 1090958, at *5 (C.D. Cal. Apr. 20, 2026). That is indistinguishable from the allegations here, which likewise concern only information about what was watched on a television. In *Schallert v. Laird Superfood, Inc.*, the court held that there was no standing where the complaint included no information about "what specific information the website captured *from him*" or how that information implicated a protectable privacy interest. 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (emphasis added). And in *Gonzalez Merical v. The Joint Corp*., the court recommended dismissal where the "Plaintiff ha[d] not alleged specific personal or health information she disclosed that implicates a protectable privacy interest." 2026 WL 2225531, at *13 (E.D. Cal. Aug. 3, 2026) (report and recommendation).

Nor are *Popa* and the other cases cited in Amazon's Motion distinguishable because they involve "web browsers." Opp. at 10–11. *Popa*'s holding is technology-neutral. And Plaintiffs' assertion that televisions warrant different treatment because they are "in home" ignores that consumers regularly browse websites and stream video from devices within their homes. Plaintiffs articulate no basis for applying different standards to video-viewing information collected through an internet browser, as in *Diaz*, 2026 WL 1090958, at *4–*5, versus a smart TV, as asserted here.

Plaintiffs cannot salvage their claims with pre-*Popa* cases. Even if the standing analysis in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), remains good law—doubtful given *Popa*'s recognition that the "analysis finds no support in *TransUnion*"—Plaintiffs have not pleaded injury under its holding because they do not plausibly allege that Amazon "discloses otherwise private information."

*Popa*, 153 F.4th at 794; *Eichenberger*, 876 F.3d at 983–84. *Popa* has similarly cast doubt on Plaintiffs' other cited authority, which in any event involved allegations of unlawful collection of the *plaintiffs'* private information—allegations missing here. *See Popa*, 153 F.4th at 792–93; *see also Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (collection and storage of plaintiffs' "private text messages" and call logs); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) (collection of plaintiffs' browsing history "no matter how 'sensitive' or personal" and "a cradle-to-grave profile" that "could include a user's employment history and political and religious affiliations").

**2. The Opposition Confirms Plaintiffs Did Not Have an Expectation of Privacy in Data Purportedly Collected.**

Plaintiffs lack standing for the independent reason that they had no reasonable expectation of privacy, in light of Amazon's disclosures about its data collection practices. Plaintiffs do not oppose Amazon's request for judicial notice of the Amazon Conditions of Use and Privacy Notice (Dkt. 25), which notified Plaintiffs that "Amazon processes and retains audio, interactions, viewing, and other data in the cloud," that Amazon may "collect and analyze … content interaction information, such as content downloads, streams, and playback details," and that collected data may be used for various purposes including to "display interest-based ads." Mot. at 2–3, 8–9; Matondo Decl. Ex. B (Dkt. 24-2) at 2. Indeed, the Opposition *admits* that a user reading those disclosures "learns that Amazon knows she watched a Netflix show and several YouTube videos over the course of two hours." Opp. at 18.

These concessions are fatal to Plaintiffs' standing. Because there is no dispute that Plaintiffs were informed that Amazon collected information about the content they viewed, they lacked a reasonable expectation of privacy in that information. *See* Mot. at 8–9; *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (no standing because plaintiff "lack[ed] an expectation of privacy in the data at issue").

The Opposition offers no substantive response. Opp. at 9–13. It argues elsewhere that Amazon's disclosures did "not clearly put consumers on notice as to its ACR technology" or describe how Amazon analyzes the data collected. *Id.* at 17–18. But the "harm" here is not the presence of ACR or how Amazon analyzes the data. It is Amazon's purported collection of information about the content Plaintiffs viewed,

which Plaintiffs admit the disclosures cover. *See* Opp. at 9, 11–12 (asserting harm based on purported "surveillance," "intrusion," and "capture" of content watched on Fire TVs); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (plaintiffs had "no reasonable expectation of privacy in [] data" where defendant's policy disclosed its "intention to track their activity"). That ends the matter.[1]

**B. Plaintiffs Fail to State Any Claim.**

**1. The VPPA Claim Must Be Dismissed.**

Amazon's opening brief demonstrated that the Complaint fails to allege any facts showing a disclosure to a third party of information that would personally identify Plaintiffs. *See* Mot. at 9–10. In response, the Opposition fails to identify any such facts alleged in the Complaint. Rather than identify any disclosure, the Opposition asserts that *Amazon itself*—not a third party—uses ACR data for "monitoring" consumer behavior, "analyzing" information, and creating a "dossier" for "ad targeting." Opp. at 14. But Amazon's alleged internal use of data (for advertising or any other purpose) cannot give rise to a VPPA violation, which requires—as even Plaintiffs' authority confirms—that a plaintiff "show that the defendant *disclosed*" personally identifiable information. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 635 (N.D. Ill. 2024) (emphasis added).

The Opposition further asserts that the "relevant disclosure here" is "the viewing-derived fact" "that an identifiable consumer or household satisfies the advertiser's viewing-based criterion" purportedly based on "dossiers" compiled by Amazon. Opp. at 14. But this new theory cannot salvage the Complaint. To start, it is nowhere alleged in the Complaint. To the contrary, the Complaint alleges that Amazon *itself* engages in targeted advertising. *See, e.g.*, Compl. ¶ 51 ("allowing Amazon to target consumers"); ¶ 73 ("allows Amazon to engage in comprehensive, targeted advertising"). The Complaint mentions no such

[1] Plaintiffs also contend that their own failure to plead the accurate setup and privacy settings somehow creates a "factual dispute" that cannot be resolved at the pleadings stage. Opp. at 18. That is obviously incorrect. Plaintiffs' allegations and Opposition confirm that they were notified that Amazon may collect data about content viewed on their Fire TV devices and thus lacked a reasonable expectation of privacy in this data. That they omitted *additional* disclosures Amazon made about ACR does not alter this conclusion or create a factual dispute, especially when these disclosures are not pleaded in the Complaint or otherwise before the Court.

"dossier." Plaintiffs cannot use their opposition to introduce new allegations. *Vasquez v. Wash. Dep't of Veterans Affs.*, 2024 WL 4979847, at *6 & n.4 (W.D. Wash. Dec. 4, 2024).

In addition, even if this theory were pleaded, it would still fail to state a claim, such that amendment to add these allegations would be futile. Plaintiffs fail to explain how the purported "viewing-derived fact" that a consumer "satisfies the advertiser's viewing-based criterion" either discloses video content or could possibly be used by "an ordinary person" to personally identify Plaintiffs as required to state a VPPA claim. *Eichenberger*, 876 F.3d at 985–86. The sole authority on which Plaintiffs rely in connection with this theory is an out-of-circuit district court decision involving materially different allegations than those that Plaintiffs now seek to add. *See Campos*, 716 F. Supp. 3d at 636–37 (defendant confirmed in its privacy policy that it discloses (and not merely *may* disclose) "the relevant categories of information to others," and the company "partnered with TransUnion" and "matche[d] third-party data to 'existing customers' to allow advertisers to target specific individuals" (cleaned up)).

**2. The Intrusion Upon Seclusion Claim Must Be Dismissed.**

Plaintiffs' intrusion upon seclusion claim is defective for the same reasons that Plaintiffs lack standing: they have not alleged any "highly offensive" data collection, and they had no reasonable expectation of privacy in the information collected. *See supra* at II.A.2.

Again, the Opposition fails to show how the Complaint alleges that any collected information is "sufficiently specific or personal" to Plaintiffs, as required to plead a "highly offensive" intrusion, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022), and instead invokes generalized assertions about how ACR operates and Plaintiffs' unpleaded "dossier" theory. Opp. at 16–17. The cases the Opposition relies on allowed intrusion upon seclusion claims to survive based on specific allegations of collection of the plaintiffs' highly sensitive personal data, such as plaintiff's "personal health information," *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *10 (W.D. Wash. Dec. 19, 2023), or plaintiff's "personal diary" with "details about Plaintiff's private marital relations," *Armijo v. Yakima HMA, LLC*, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012), or collection despite the plaintiffs' affirmative opt-out, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). There are no similar allegations here.

Plaintiffs have also failed to satisfy their burden of alleging a reasonable expectation of privacy for the reasons discussed above. They argue that Amazon's disclosures were insufficient because they did not describe everything that Amazon allegedly did with the collected data, but the "intrusion" here is the purported "monitor[ing] and record[ing]" of what users watch on their televisions, Compl. ¶¶ 120–21—not what Amazon did with the collected data. Plaintiffs' "consent to the allegedly intrusive act"—which they do not dispute—"'negates the element of intentional intrusion upon [their] private affairs.'" *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (citation omitted).

**3. All Consumer Protection Claims Must Be Dismissed.**

***Washington Law.*** Plaintiffs concede that because they "assent[ed] to the Conditions of Use," their claims are governed by Washington law—a concession that is dispositive of their consumer protection claims and bars claims under other states' law. Opp. at 20; Mot. at 12. And the Complaint does not plead any Washington Consumer Protection Act ("CPA") claim—much less with the particularity required by Rule 9(b).

The Opposition's assertion that the Complaint pleads a CPA claim is meritless. The CPA is not listed or cited in the Complaint's seven "Causes of Action." The Complaint contains only a single citation to the statute—buried in a footnote to a subclass definition—and fails to allege the elements of the claim. Compl. ¶ 94, n.22. Because Plaintiffs "fail to include even a 'formulaic recitation of the elements' of [the] cause[] of action," they do not plead a CPA claim. *LaBella v. Apple Inc.*, 2025 WL 3014037, at *2 (N.D. Cal. Oct. 28, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs also do not allege facts supporting the elements of a CPA claim. Because Plaintiffs assert that Amazon "intentionally conceal[ed]" the practices at issue, Compl. ¶ 127, any CPA claim would be subject to Rule 9(b), *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1037 (W.D. Wash. 2025) (Lin, J.) ("Rule 9(b) applies to CPA claims when they allege a specific intent to deceive or a 'unified fraudulent course of conduct.'") (internal citation omitted). But Plaintiffs do not plead the facts required to state the elements of a CPA claim, including an "unfair or deceptive act or practice," an "injury to [their] business or property," or causation—much less with particularity—for the same reasons that the

Complaint fails to allege similar elements under the ICFA and GBL as Amazon's opening brief demonstrated. *Id.* at 1036 (listing elements of CPA claim); *see* Mot. at 13–15.

Plaintiffs' request for "leave to amend to assert the CPA claim on behalf of the nationwide class" should be denied. Opp. at 20. Plaintiffs could have amended as a matter of course in response to Amazon's Motion but chose not to—even though they "agree" Washington law applies. *Id.* And granting leave to amend to assert a CPA claim would be futile, for the same reasons that Plaintiffs cannot allege similar elements under ICFA and the GBL.

***Other State Law Claims***. Although Plaintiffs concede that the Conditions of Use preclude non-Washington claims, they still argue that they have stated consumer protection claims under nine other states' laws. They are incorrect. Plaintiffs argue that they did not "merely allege a 'cursory listing of other states' statutes.'" Opp. at 21. But the Complaint does exactly that, listing ten states' statutes in a footnote to a subclass definition, and generally asserting "Violation of the State Consumer Fraud Acts" without specifying the relevant statutes or how they were purportedly violated. Compl. ¶¶ 124–131. In any event, "Plaintiffs do not sufficiently allege facts establishing the elements of each state claim." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 994 (W.D. Wash. 2022).

With respect to Plaintiff Manypenny's ICFA claim, the Opposition does not dispute that Plaintiff Manypenny must identify an alleged misrepresentation or omission with particularity. Opp. at 22–23. Unable to identify any misrepresentation, she asserts that her claim is "built on omissions." *Id.* at 23. But an omission theory fails for two reasons. *First*, the Opposition does not dispute that Amazon discloses that it may collect information about content on Fire TV devices—the very information purportedly omitted. *See supra* at II.A.2. *Second*, to proceed on an omission theory, Manypenny must identify "direct statements" from the defendant "that contain material omissions." *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021). She has not done so.

The Opposition also fails to identify allegations establishing causation. Plaintiffs observe that an "indirect deception" can suffice under ICFA, Opp. at 23, but a plaintiff must still see or hear the alleged misstatement to rely on it. *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 981 (N.D. Ill. 2025). Manypenny does not allege she "s[aw] or heard any such statement," and therefore she "cannot prove

proximate cause." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554 (2009). She asserts she purchased a Fire TV through Amazon's website where the omissions purportedly appeared on unspecified pages, but does not allege she read those pages. Opp. at 23.

Nor does the Opposition identify allegations of benefit-of-the-bargain damages, much less with the particularity Rule 9(b) requires. *Id.* at 23; Mot. at 13–14. Manypenny offers only the conclusory assertion that "the Product she received (a TV that surveils) is worth less than the Product she bargained for." Opp. at 23. That is insufficient—especially since the Complaint alleges the technology can be disabled. Compl. ¶¶ 18, 67; *see Libman v. Apple, Inc.*, 2024 WL 4314791, at *19 (N.D. Cal. Sept. 26, 2024) (allegations plaintiffs "would not have purchased" or "would have paid less" for products "had they known about the data collection at issue" are "conclusory" and "insufficient to plead damages under consumer protection laws").

As for Plaintiff Enser's GBL claims, the Opposition fails to point to allegations of "materially misleading conduct" as required by the GBL. Opp. at 24; Mot. at 14. Enser's attempt to criticize Amazon's disclosures as insufficiently specific fails to identify any "specific deceptive statement [Amazon] made, or the additional disclosures [Amazon] should have made." *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499–500 (S.D.N.Y. 2023) (dismissing GBL claim as "insufficiently particular").

Enser's causation argument likewise fails. He asserts misstatements or omissions on "the packaging of the Products, the Defendants' website, and the online pages for the Products." Opp. at 25 (citing Compl. ¶ 138). But he "nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his" Fire TV device, and thus fails to plead causation. *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004). Plaintiffs neither cite any authority excusing that requirement for packaging nor even identify an alleged misstatement or omission on the packaging.

The Opposition concedes that "a would-not-have-purchased allegation 'standing alone, is not a cognizable injury,'" and "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury." Opp. at 26 (quoting *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69–70 (9th Cir. 2019)). That describes Enser's allegations. Compl. ¶¶ 155, 164 (alleging Enser "would not have

purchased the Products had [he] known the truth" and "overpaid for the Products"). Plaintiffs' assertions about "Amazon's surveillance" and "lack of disclosure" (Opp. at 26) "conflate[] the [allegedly] deceptive act with the injury." *Naimi*, 798 F. App'x at 70.

Enser's Section 350 claim fails for the additional reason that he does not allege a false advertisement. Enser argues that his "theory rests on how Amazon marketed the televisions," but he does not point to any specific advertisements, let alone allege their falsity. Opp. at 26.

**4. The Implied Contract Claim Must Be Dismissed.**

The Opposition concedes that "an express contract forecloses an implied one," but contends that whether Amazon's Conditions of Use "cover[] the same subject" as the alleged implied contract "is a contested question." *Id.* at 27. That contention is untenable given Plaintiffs' concession that Washington law applies *because* the alleged conduct is governed by the Conditions of Use. *Id.* at 20. Any additional agreements do not change Plaintiffs' admission that an express contract governs their claims.

The Opposition identifies no offer, representation, or promise to Plaintiffs—let alone about ACR. *See* Opp. at 26–28. Nor does it allege mutual assent or definite, enforceable terms that were purportedly breached. *Id.* The only Plaintiff-specific allegations it points to—that Plaintiffs purchased and used Fire TV devices—fail to plead a "meeting of the minds" that the televisions would not use ACR. *Id.* at 27–28; *see Covarrubias v. Am. Airlines, Inc.*, 2011 WL 13100749, at *2 (W.D. Wash. Apr. 21, 2011) (dismissing implied contract claim based on "vague assertions regarding lack of notice, expectations, and self-imposed obligations"). Indeed, Enser did not even purchase his device from Amazon. Compl. ¶ 22.

Finally, the Opposition does not dispute that the alleged "diminution of the value of Plaintiffs' personal information" is not recoverable and that benefit-of-the-bargain damages have not been adequately alleged. Opp. at 28; Mot. at 16–17. It instead pivots to a price-premium theory. But that theory requires Plaintiffs to "allege sufficient facts in their complaint to show that the products they purchased were offered for higher prices than other comparable products, as well as that Plaintiffs purchased the products based on the alleged misrepresentations." *Morehouse v. Apple, Inc.*, 2025 WL 3525573, at *2 (N.D. Cal. Dec. 4, 2025). The Complaint's bare assertions that Plaintiffs "would not have purchased" their TVs or "would have paid less for them" had they known the "truth" do not suffice.

Compl. ¶¶ 143, 155; *see Morehouse*, 2025 WL 3525573, at *2 (holding that similar allegations are insufficient).

### 5. The Unjust Enrichment Claim Must Be Dismissed.

The Opposition does not dispute that Plaintiffs' unjust enrichment claim is derivative of their other claims and barred by the parties' express contract. Opp. at 29–30; Mot. at 17–18. It instead asserts that the claim may proceed in the alternative. Opp. at 30. Not so. Where—as here—an unjust enrichment claim rests on the same conduct as other claims, it fails for the same reasons those claims fail. *Geraci v. Homestreet Bank*, 203 F. Supp. 2d 1211, 1217 (W.D. Wash. 2002), *aff'd*, 347 F.3d 749 (9th Cir. 2003); Mot. at 17–18. And alternative pleading is unavailable where—as here—the complaint admits that an express contract governs. *See* Mot. at 17; *contra Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, 2022 WL 4534422, at *6 (W.D. Wash. Sept. 28, 2022) (permitting alternative pleading of unjust enrichment only because complaint challenged validity of contract).

The Opposition also fails to identify any benefit conferred on Amazon at Plaintiffs' expense. Opp. at 29–30; Mot. at 18. It falls back on a price-premium theory, but that theory has not been adequately pleaded. *See supra* at II.B.4.

## III. CONCLUSION

The Complaint should be dismissed with prejudice.

By: *s/ Charles C. Sipos*
Charles C. Sipos (Bar No. 32825)
Lauren J. Tsuji (Bar No. 55839)
**ASHURST PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
206-359-8000
*CSipos@ashurstperkins.com*
*LJTsuji@ashurstperkins.com*

By: *s/ Jonathan M. Sperling*
Jonathan M. Sperling (*Pro Hac Vice*)
Jordan Joachim (*Pro Hac Vice*)
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001-2170

212-841-1000
*jsperling@cov.com*
*jjoachim@cov.com*

Marianne Spencer (*Pro Hac Vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
202-662-6000
*mspencer@cov.com*

*Attorneys for Defendants AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AMAZON DIGITAL SERVICES LLC, and AMAZON TECHNOLOGIES, INC.*

I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.